**UNITED STATES of America, Plaintiff,**

v.

**MENOMINEE INDIAN TRIBE OF WISCONSIN, Defendants.**

Civ. A. No. 88–C–76.

United States District Court,
E.D. Wisconsin.

Sept. 19, 1988.

**1374**

Patricia Gorence, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Milton Rosenberg, Madison, Wis., Jerry Straus, Washington, D.C., for defendants.

### ORDER

TERENCE T. EVANS, District Judge.

The United States Government brought this action for declaratory and injunctive relief against the Menominee Indian Tribe of Wisconsin and Native American Diversified Services. In it, the government contended that the defendants are conducting gambling activities on the Menominee Reservation in violation of 18 U.S.C. § 1955 and 15 U.S.C. § 1175. Both defendants filed motions to dismiss the complaint. However, a stipulated settlement was reached under which Native American Diversified Services was dismissed from the suit as were all claims pursuant to 15 U.S. C. § 1175. Accordingly, the Menominee Indian Tribe of Wisconsin is the only remaining defendant to this action.

In the complaint the government contends that in April 1987, the Menominee Tribal Legislature amended tribal ordinance 82–12 to state that the tribe had the sole authority to engage in "gaming" on the reservation and to establish a Tribal Gaming Commission to oversee all "gaming." In June 1987, the tribe opened a casino which includes games like roulette and blackjack. The government contends that the casino is open daily, involves five or more persons, and receives gross revenues exceeding $2,000 in a single day. Non–Indian residents of Wisconsin, it is alleged, frequent the casino. The activities are said to violate the Organized Crime Control Act (OCCA), 18 U.S.C. § 1955.

The government seeks a declaratory judgment "that the casino currently operated by the Menominee Indian Tribe of Wisconsin on its reservation is in violation of federal law," and an injunction enjoining the tribe from "continuing to operate this commercial gambling business...." The tribe has filed a motion to dismiss the complaint, raising fascinating issues of jurisdiction over the Menominee Reservation.

■ Wisconsin is a "Public Law 280"[1] state, which means that Wisconsin can assert jurisdiction over its Indian reservations. However, effective in 1976, Wisconsin Governor Patrick Lucey retroceded jurisdiction over the Menominee Reservation to the United States.

What retrocession means is that the State of Wisconsin cannot enforce its gambling laws on the reservation even though it appears that the state's present Attorney General, Donald J. Hanaway, would like to do so. On June 19, 1987, Mr. Hanaway wrote Lucille Chapman, chairperson of the Menominee Tribal Legislature, to tell her that after investigation, he had concluded that the casino was in violation of Wisconsin law—an interesting, if not particularly relevant, conclusion.

Because of retrocession of jurisdiction, the Indian Country Crimes Act, 18 U.S.C. § 1152, applies on the Menominee Reservation. With certain exceptions, the law extends to "the Indian country" the "general laws of the United States as to the punishment of offenses...."

However, the general laws of the United States do not cover all offenses. Many acts are prohibited solely by the laws of the various states. And Indian reservations are not the only places over which the federal government, not state government,

---

**1.** 28 U.S.C. § 1360; 18 U.S.C. § 1162.

has jurisdiction. Rather than codifying laws to apply in those federal jurisdictions, Congress passed the Assimilative Crimes Act, 18 U.S.C. § 13, which provides that persons guilty of acts which are not punishable under federal law, but which would be punishable under the jurisdiction of the state in which certain federal sites are located, are guilty of the offenses described in the state law.

A reading of the Assimilative Crimes Act, by itself, does not require a conclusion that it applies to Indian reservations. The government argues, however, that it is applied to Indian reservations by the Indian Country Crimes Act which, as I stated above, applies the "general laws of the United States as to the punishment of offenses ... to the Indian country." The tribe argues that the Assimilative Crimes Act is not a "general law of the United States" within the meaning of the Indian Country Crimes Act and therefore does not assimilate state law for application on the reservation.

As if this weren't enough complexity, the law which the government contends is violated is the Organized Crime Control Act, 18 U.S.C. § 1955, which prohibits illegal gambling businesses which involve five or more persons, gross at least $2,000 in a single day, and are in violation of state law. In other words, the OCCA itself incorporates state law.

In moving to dismiss the complaint for failure to state a claim, the tribe contends, among other things, that all of this statutory fancy footwork is insufficient to bring it within the reach of 18 U.S.C. § 1955. I disagree.

There is no dispute here that the state of Wisconsin cannot prosecute Indians or the tribe for alleged illegal gambling activities occurring on the Menominee Reservation. However, the United States is seeking to enforce its law, not the law of the state of Wisconsin. The enforcement of section 1955 is an exercise of federal rather than state authority. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).

■ It is well established that Congress may incorporate by reference state criminal laws in federal criminal statutes. *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958).

When section 1955 was enacted, Congress recognized the need to take into account the various state systems concerned with commercial gambling. It recognized that gambling activities that are legal in one state are illegal in others. This incorporation of state law into federal law has been utilized by Congress in other areas, and courts have applied these statutes to Indian reservations. *See Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (liquor licensing); *United States v. Sohappy*, 770 F.2d 816 (9th Cir.1985), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3278, 91 L.Ed.2d 568 (1986) (preservation of fish and wildlife). In *United States v. Sohappy*, the court acknowledged that the Lacey Act, which was enacted to protect and preserve wildlife, extended beyond Indian tribal law by also incorporating state and federal law. In concluding that the Lacey Act applied to Indians, the court stated: "To exempt Indians from these penalties would impede attainment of Congress' goal." *Id.* at 821.

■ The tribe argues that the legislative history of section 1955 shows that Congress did not contemplate applying this section to gambling activities on Indian reservations. However, it is certain that Congress did not elect to specifically exempt illegal gambling activities on Indian reservations from the prohibitions of section 1955. Rather, it reflects a strong federal policy against all kinds of large-scale professional gambling. It was designed to further federal interests in interstate commerce by prohibiting large-scale illegal gambling enterprises.

This case involves a federal statute expressing a clear congressional policy on professional gambling. Nothing in its legislative history evinces any intent on the part of Congress to exempt Indian tribes from its operation. No balancing between state and tribal interests is necessary since the concern in this case is with federal enforcement of a federal statute. The fact

that one of the elements necessary to establish a violation of section 1955 is a violation of state law does not put activities on the reservation beyond its reach. This conclusion finds support in the decisions of courts in other circuits that have concluded that certain gambling activities on federal Indian reservations are proscribed by section 1955. *United States v. Dakota,* 796 F.2d 186 (6th Cir.1986); *United States v. Farris,* 624 F.2d 890 (9th Cir.1980). In light of the clear language of section 1955, the stated purpose of the law, and the persuasive precedent from the sixth and ninth circuits, the tribe's motion to dismiss this action because it is not subject to the law should be denied. However, for reasons unrelated to the merits of the issue, I think the motion to dismiss must be granted on an alternative ground.

Returning to the complaint, I note that the government asks for declaratory and injunctive relief: a declaration that the casino in question violates federal law and an injunction against the tribe's continuing to operate it. In this civil action the government is asking me to declare that a criminal law is being violated and to enjoin that violation. It is not an unprecedented request, but it is a request which requires me, I believe, to look at the adequacy of the complaint and to consider whether the requested relief could be granted. If not, the complaint should be dismissed.

Logically, the declaratory judgment here precedes the injunction, for there must, in this case, be a determination that a law is violated before that violation can be enjoined. Nevertheless, for purposes of this decision, I will first consider the request for injunctive relief—assuming for the moment that the law is being violated.

■ The rule is that equity will not enjoin the commission of a crime. *S.E.C. v. Carriba Air, Inc.,* 681 F.2d 1318 (11th Cir. 1982); 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2942. The rule is not absolute. Injunctions can be issued if the conduct is creating a widespread public nuisance or endangering the national security. In *United States v. Zenon,* 711 F.2d 476 (1st Cir.1983), the court

enjoined trespassers from entering restricted areas owned by the United States Navy at Vieques, Puerto Rico. The court found that the naval operations at Vieques were vital to the national defense of the United States and that the trespassers had interfered substantially with the operations. In *United States v. Jalas,* 409 F.2d 358 (7th Cir.1969), the court found no threat to the national defense and denied an injunction to prevent violations of the Landrum–Griffin Act. The lesson from these cases is that exceptions to the rule are not easily found. Courts are understandably uneasy about announcing criminal law violations in the context of civil cases. As the court stated in *Jalas, supra,* at 361, "If we were to ... enjoin Jalas from holding office, we would necessarily be deciding in the context of a civil action an important criminal law question...."

■ Another exception to the rule that equity does not enjoin a crime exists if Congress provides specifically for injunctive relief. In *Carriba Air, Inc., supra,* the court noted that in enacting 15 U.S.C. § 77t, Congress specifically authorized injunctions to prohibit violations of the securities laws.

■ In this case, the government had alleged at para. 17 that "[t]his court is empowered under common law to enter restraining orders or any other actions it deems proper to stop illegal activities." There are no allegations that any specific statute provides for injunctions prohibiting violations of OCCA. There are no allegations in the complaint that would hint at a wide-spread public nuisance or a threat to the national defense in the operation of the casino on the Menominee Reservation. As to the request for injunctive relief, I find that the complaint fails to state a claim upon relief can be granted.

■ The request for declaratory relief presents somewhat different issues. The request is for a judgment that the activities at the casino violate a federal criminal law. In the exercise of discretion, the complaint for declaratory relief will be dismissed.

Because the complaint for injunctive relief will be dismissed, there is little point in granting declaratory relief. If I were to find, for instance, that the casino violated the criminal law and were to issue a declaratory judgment, which is, of course, a civil judgment, it would be of little value to anyone. It would not be *res judicata* in a criminal case.

To use an analogy: suppose the government wanted to prosecute a bank robber who was using a toy gun to convince tellers to hand over the cash, but first the government wanted to know whether by using a toy gun, the robber committed "armed" rather than simple robbery. Should a court issue a declaratory judgment that the robber committed an armed robbery, or should that issue be litigated in a criminal case? I think the latter. The essence of the request for both declaratory and injunctive relief is that a crime is being committed. As framed, the issue is not one which should be decided in a civil proceeding. A criminal proceeding, where proof beyond a reasonable doubt is necessary for a conviction, is the place where these issues should be decided.

IT IS THEREFORE ORDERED that this action is DISMISSED.