**HERSHEY FOODS CORPORATION,**
Plaintiff,

v.

**U.S. DEPARTMENT OF AGRICULTURE,**
Defendant.

No. Civ.A. 99–2138(EGS).

United States District Court,
District of Columbia.

May 18, 2001.

James D. Miller, King & Spalding, Washington, D.C., Stephen F. Rosenthal, U.S. Department of Justice, Civil Division, Washington, D .C.

## MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

### I. Introduction

Plaintiff Hershey Food Corporation filed this action in August 1999, seeking judicial review of a regulation promulgated by defendant U.S. Department of Agriculture (USDA) that placed milk used to make chocolate milk into two different classes and fixed a price differential between the two classes. 64 Fed.Reg. 16026 (Apr. 2, 1999) (adopted in relevant part as Final Rule, 64 Fed.Reg. 47897–48021 (Sept. 1, 1999)). Plaintiff's original complaint alleged that this classification scheme violated the Federal Agricultural Improvement and Reform Act of 1996, Pub.L. No. 104–127, and was arbitrary, capricious, and in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706.

Before the Court ruled on plaintiff's APA challenge, Congress passed, and the President signed, the Consolidated Appropriations Act, Pub.L. No. 106–113. Section 1000(a)(8) of the Appropriations Act provides that "H.R.3428 of the 106th Congress, as introduced on November 17, 1999" is "hereby enacted into law." H.R. 3428 provides that the final rule, as published at 64 Fed.Reg. 47897–48201 (Sept. 1, 1999), "shall take effect, and be implemented by the Secretary of Agriculture, on the first day of the month beginning at least 30 days after the date of enactment of this Act," namely, January 1, 2000. H.R.3428, § 1(b). On December 30, 1999, the Court held that the rule originally challenged by plaintiff had been enacted into law by the Appropriations Act.[1] Dec. 30, 1999 Order. The Court dismissed plaintiff's complaint without prejudice. Plaintiff then filed an amended complaint and added claims that section 1000(a)(8) of the Appropriations Act violates the Presentment Clause and the Due Process Clause of the U.S. Constitution.

Before the Court are defendant's motion to dismiss and plaintiff's motion for summary judgment.[2] An amicus brief was filed by the International Dairy Foods Association.

### II. Standard of Review

The Court will not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, in evaluating defendant's motion to dismiss, the Court accepts as true

---

1. Plaintiff asks the Court to reconsider this Order. However, the Court still finds that the rule originally challenged by plaintiff has been enacted into law by the Appropriations Act.

2. On March 30, 2001, the Court issued an Order granting defendant's motion to dismiss and denying plaintiff's motion for summary judgment. That Order stated that a Memorandum Opinion and Order setting forth the Court's rationale would follow and that, at that time, the Clerk of the Clerk shall enter Final judgment for the defendant and against the plaintiff.

all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal,* 16 F.3d at 1276.

Summary judgment should be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the Court will construe the evidence and factual inferences arising therefrom in the light most favorable to the opposing party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. Discussion

The Court has held that the rule originally challenged by plaintiff is now a statute. Plaintiff makes two challenges to this statute. First, plaintiff argues that the statute violates the Presentment Clause of the U.S. Constitution. Second, plaintiff argues that the statute violates the Due Process Clause of the U.S. Constitution.

### A. *Presentment Clause*

The Presentment Clause demands that before a bill becomes a law, it must pass both Houses of Congress and then be presented to, and signed by, the President. U.S. Const. Art. I, § 7. Plaintiff argues that in order to comply with the Presentment Clause, the entire text of a purported law must be voted on by both houses of Congress and presented to the President, and that in this case, the Consolidated Appropriations Act was not properly presented to the President. Plaintiff applies the following logic. The President did not

have a suitable opportunity to consider whether to approve the enactment of the terms of the final rule, because the proposed law, as presented to the President, contained a cross-reference to a bill that contained a cross-reference to the final rule. This means that in order for the President to fulfill his constitutional duty to consider whether to approve the enactment of the bill, he would have had to locate and review both H.R.3428 and the final rule. This violates the Constitution, because the cross-reference undermines the President's opportunity to consider the legislation. Plaintiff also argues that inclusion of the full text would safeguard the public interest.

Defendant argues that the passage of the Appropriations Act did not run afoul of the Presentment Clause. Defendant correctly points out that the Appropriations Act actually passed both houses of Congress, was presented to the President, and was signed by the President in a timely manner. Defendant also correctly points out that the Presentment Clause, at least on its face, does not prohibit the use of incorporating text outside the four corners of a bill by cross-reference, either for purposes of passing a bill by Congress or for purposes of presenting a bill to the President. Defendant argues that for the Court to find otherwise would interfere with the constitutionally conferred discretion that Congress and the President enjoy in their lawmaking functions and would raise serious separation-of-powers concerns.

■ There is no case precedent addressing the precise issue of whether incorporating text through cross-reference violates the Presentment Clause. Defendant points to cases where the Supreme Court has suggested that the fundamental purpose of Presentment Clause is to provide an opportunity for the President to

consider bills presented to him. *See Edwards v. United States,* 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239 (1932); *Wright v. United States,* 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938). The plaintiff in *Wright* argued that the President had not effectively vetoed a bill because the Senate was in recess at the time of the return and that its officers, who were not at work during the time of the return, were not constitutionally authorized to accept the President's veto message. The Supreme Court held that to say that the President cannot return a bill when the house in which it originated is in recess, "is to ignore the plainest practical considerations and [implies] a requirement of an artificial formality to erect a barrier to the exercise of a constitutional right." *Wright,* 302 U.S. at 590, 58 S.Ct. 395. Thus, defendant argues that the appropriate question for the Court to address is whether the format of the Appropriations Act denied the President the opportunity to consider the contents of the cross-referenced bill. Defendant asserts that it did not.

Plaintiff principally relies on *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), and *Clinton v. New York,* 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998), to support its assertion that cross-referencing text within a bill is constitutionally impermissible. In *Clinton,* the Supreme Court reasoned that the Line Item Veto Act contravened the Presentment Clause because it permitted the President to create a law "whose text was not voted on by either House of Congress or presented to the President for signature." *Clinton,* 524 U.S. at 448, 118 S.Ct. 2091. Thus, plaintiff argues that since the actual text of the final rule was not voted on by Congress, or presented to the President, the Appropriations Act fails to comply with the Presentment Clause. *Clinton* did not address the constitutionally acceptable form of a bill or the issue of incorporation-by-reference. In this case, unlike in *Clinton,* both Houses of Congress passed, and the President signed, the identical text. The bill Congress passed, and the President signed, contained the exact same cross-reference, which leads one to the text of the final rule. In *Clinton,* the President had substantively changed the contents of the bill presented to him. The Court held that Congress may not give "the President the unilateral power to change the text of duly enacted statutes." *Id.* at 447, 118 S.Ct. 2091. In this case there was no substantive change made to the bill by the President. Here, the House of Representatives passed a bill which expressly incorporated H.R.3428 (which codified and amended the milk marketing provisions at issue). The Senate then passed the exact same bill, incorporation and all. That exact same bill was presented to the President, and he signed it into law.

*Chadha* also addressed an entirely different situation than the one presented here. In *Chadha,* the Supreme Court counseled that the dictates of the Presentment Clause should not be ignored in deference to a procedure that is more efficient. *See* 462 U.S. at 959, 103 S.Ct. 2764. The Supreme Court found that a law that authorized either House of Congress, by resolution, to invalidate the decision of the Executive Branch, violated the Presentment Clause. *Id.* The Supreme Court held that a law must withstand bicameral passage by Congress and presentment to the President. *Id.* In this case, the Appropriations Act withstood just that.

Plaintiff argues that the President did not have a suitable opportunity to consider whether to approve the enactment of the terms of the final rule, because the bill contained the cross-reference. Plaintiff argues that the President would have to locate and review H.R.3428 and the final rule and that this would confuse the

President. Plaintiff concludes that this undermined the President's opportunity to consider the legislation in the same way depriving the President of the full ten-day period of review would. Defendant argues that the President's signature should be taken as conclusive proof that the President had an adequate opportunity to consider the bill.

■ The Court agrees with defendant that the President's decision whether to sign a bill is a non-justiciable political question. *See Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The Constitution provides no guidance for judicial review of the adequacy of the President's consideration of a bill. Unlike the previous Presentment Clause cases, here plaintiff is attacking the significance of the President's signature and arguing that despite the President's signature, he did not have an adequate opportunity to review the bill.

However, regardless of whether the adequacy of the President's signature is subject to judicial review, defendant asserts that the President did adequately review the bill. The incorporated bill (H.R .3428) was published in the Congressional Record, and the final rule was issued by a Cabinet Department under the President's supervision. Both were public documents available to the President before the Appropriations Act was even passed. Plaintiff argues that the alleged Presentment Clause problems were exacerbated because the bill was confusing. However, the Constitution does not allow the President additional time for review when a proposed bill is complicated or confusing.

Laws containing cross-references do not appear to be uncommon. While no case has addressed the Presentment Clause challenge, several courts have upheld laws containing cross-references. *See e.g., United States v. Sharpnack,* 355 U.S. 286, 293, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958) ("Whether Congress sets forth the assimilated laws in full or assimilates them by reference, the result is as definite and as ascertainable as are the state laws themselves."); *United States v. Menominee Indian Tribe of Wisconsin,* 694 F.Supp. 1373, 1375 (E.D.Wis.1988) ("It is well established that Congress may incorporate by reference state criminal laws in federal criminal statutes."); *Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 433 n. 1, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992) (involving an appropriations act in which Congress incorporated by reference, among other things, a list of spotted owl habitat areas contained in a Forest Service environmental impact statement).

For the foregoing reasons, the Court is not persuaded by plaintiff's interpretation of the Presentment Clause. Congress may incorporate by cross-reference in its bills if it chooses to legislate in that manner. Nothing in the Presentment Clause, or elsewhere in the Constitution, demands otherwise.

B. *The Due Process Clause of the Fifth Amendment*

Plaintiff asserts that the Appropriations Act deprives plaintiff of the equal protection of the laws. Both plaintiff and defendant agree that the Court should apply a rational basis standard in reviewing plaintiff's equal protection claim. Plaintiff correctly points out that while the rational basis standard is a low standard that the government can usually meet, victory for the government is not automatic. *See e.g., Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

■ Plaintiff asserts that this case does not present an ordinary equal protection question. Plaintiff argues that since, under its theory, neither Congress nor the

President considered the full text of the final rule, the Court should not apply the extremely deferential standard of review normally afforded rational basis review. This argument is without merit. The Court shall apply rational basis review: "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Plaintiffs who "attack[ ] the rationality of [a] legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Id.* at 315, 113 S.Ct. 2096 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).

▆ Plaintiff's essential complaint is that neither the classification of milk plaintiff uses to make milk chocolate, nor the price differential between classifications of milk, has any rational basis. Plaintiff submits an affidavit of Audrey Throne, who has been employed by plaintiff since 1979 and has spent her entire career in plaintiff's milk operations. Throne states that plaintiff's milk making process is different from that of plaintiff's competitors. Plaintiff sweetens fresh fluid milk, mixes it with chocolate, and then dries it as the first step in making milk chocolate. Plaintiff's competitors purchase dried milk from independent milk drying plants which they then use to make chocolate milk. Dried milk and fluid milk are classified differently and the price of fluid milk is more than that of dried milk. Dried milk is placed in Class IV while fluid milk is placed in Class II. The price of Class II milk is 70¢ per cwt. more than Class IV milk. Thus,

plaintiff argues that since it purchases fluid milk, but plaintiff's competitors purchase dried milk, the classification imposes a substantial price penalty on plaintiff.

Plaintiff argues that the classification system is irrational because all milk starts out as fluid milk and that all milk used in making chocolate milk must be dried in the process of making chocolate milk. Since all the milk must be dried, the only difference between plaintiff and plaintiff's competitors is where the milk is dried and who dries it.

Defendant asserts that the milk classifications are supported by a rational basis. Class IV is reserved for surplus uses of milk, such as powdered milk, while higher classes, such as Class II, correspond to milk uses which command a higher value on the market. Milk powder, by virtue of having been reduced to that form, is a surplus milk product which usually commands the lowest price on the market. Defendant argues that even though plaintiff and plaintiff's competitors produce a similar finished product, they utilize milk that, for rational reasons, has different market values. Defendant points out that plaintiff may even reap the benefit of this difference by advertising its product as containing "real milk."

Defendant also asserts that the 70¢ price differential between Class II milk and Class IV milk is supported by a rational basis. The differential is designed to approximate the difference in value of fluid milk used to classify Class II products and the alternative to fluid milk used to manufacture such products, such as dried milk products. The 70¢ figure, therefore, is "an estimate of the cost of drying condensed milk and re-wetting the solids to be used in Class II products." 64 Fed.Reg. 16104. This analysis is logical and scientific, and thus satisfies the minimal requirements of rational basis review.

This Court agrees with defendant and finds that there is clearly a rational basis for the different milk classifications and the price differential. Congress may adopt an economic policy which is tailored to dealing with the majority of situations, even though the policy may disadvantage a few. *See e.g., Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."). The Appropriations Act does not violate the Due Process Clause of the Fifth Amendment.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss is **GRANTED** and plaintiff's motion for summary judgment is **DENIED;** and it is

**FURTHER ORDERED** that, in accordance with the Court's March 30, 2001 Order, the Clerk of the Clerk shall enter Final Judgment for the defendant and against the plaintiff.