**HERSHEY FOODS CORPORATION,**
Appellant,

v.

**DEPARTMENT OF AGRICULTURE,**
Appellee.

No. 01–5169.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 18, 2002.

Decided June 18, 2002.

---

Andrew G. McBride argued the cause for appellant. With him on the briefs was Eve J. Klindera. Robert M. Reese entered an appearance.

Douglas N. Letter, Litigation Counsel, U.S. Department of Justice, argued the cause for appellee. With him on the brief was Roscoe C. Howard, Jr., U.S. Attorney.

Before: SENTELLE, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Hershey Foods Corporation appeals the dismissal of its complaint seeking to vacate a portion of the Department of Agriculture's regulation establishing pricing classifications of milk used in the manufacture of milk chocolate. The district court dismissed the complaint on the ground that legislation converted the regulation into a statute, not subject to judicial review under the Administrative Procedure Act. Although we disagree with the district court in this respect, we hold that dismissal was proper because Hershey failed to exhaust its administrative remedies.

I.

The Agricultural Marketing Agreement Act of 1937 ("AMAA"), empowered the Secretary of Agriculture to regulate the sale of milk by geographic region. *See* 7 U.S.C. § 608c(5). Over the years, the Secretary issued many milk marketing orders, applying to different geographic regions and classifying milk according to the "form in which or the purpose for which it is used." 7 U.S.C. § 608c(5)(A). By 1998, there were thirty-one milk marketing orders in effect. *See Milk in the New England and Other Marketing Areas: Proposed Rule and Opportunity to File Comments, Including Written Exceptions, on Proposed Amendments to Marketing Agreements and Orders,* 63 Fed. Reg. 4802, 4805 (Jan. 30, 1998). In the Federal Agriculture Improvement and Reform Act ("FAIR Act") of 1996, Congress directed the Secretary to reduce the number of

these orders to no more than fourteen, and authorized the use of informal rule-making to expedite the process of milk marketing order consolidation. *See* 7 U.S.C. § 7253. In January 1998, the Department of Agriculture proposed a rule consolidating the number of marketing orders to eleven, and reconfiguring the milk pricing classification system. *See* 63 Fed. Reg. 4802. As promulgated, the final rule contained four milk classifications. In very general terms, Class I consisted of fluid milk; Class II, fluid milk used to produce food products such as candy; Class III, milk used to produce spreadable cheeses; Class IV, milk used to produce butter and milk products in dried form. *See Milk in the New England and Other Marketing Areas; Order Amending the Orders*, 64 Fed. Reg. 47,898, 47,903 (Sept. 1, 1999) ("the final rule"). The final rule's pricing formulas made Class II skim milk 70 cents more expensive per hundredweight than Class IV milk. *See id.* at 47,907 (to be codified at 7 C.F.R. § 1000.50(e)).

Hershey is the leading maker of milk chocolate in the United States. The company traces its beginnings to the late 19th century when Milton S. Hershey developed a process in which fresh milk was sweetened, mixed with chocolate, and dried as the first step in making milk chocolate. Today, Hershey is the only major manufacturer of milk chocolate still using fresh fluid milk in the proprietary process developed more than a century ago. Hershey's competitors purchase their milk in dried form from independent milk drying plants. (Milk chocolate must be made with dried milk.)

When Hershey buys fluid milk to make candy, it purchases the milk at Class II prices. Hershey's competitors in the milk chocolate industry pay Class IV prices because they use dried milk. Alleging the unlawfulness of the price disparity result-ing from the final rule, Hershey brought an action in district court seeking injunctive and declaratory relief.

Hershey claimed the final rule violated the Administrative Procedure Act because it was arbitrary, capricious, and contrary to the AMAA. The rule's effective date was October 1, 1999, but a federal district court in Vermont, on September 28, 1999, enjoined the Secretary from implementing the rule. *See St. Albans Coop. Creamery, Inc. v. Glickman*, 68 F.Supp.2d 380, 392 (D.Vt.1999). (The court called its injunction a "temporary restraining order" but it was in effect a preliminary injunction.) Two weeks later, Representative Blunt introduced a bill in the House of Representatives "to provide for the modification and implementation of the final rule for the consolidation and reform of Federal milk marketing orders." H.R. 3428, 106th Cong. (Nov. 17, 1999). Among other things, the bill called for the "final rule" to "take effect, and be implemented" with some alterations. H.R. 3428, § 1(b). Twelve days later, H.R. 3428 was "enacted into law," incorporated by reference as part of the 2000 Appropriations Act. *See* Pub. L. No. 106–113, § 1000(a)(8), 113 Stat. 1501, 1536–37 (1999).

On December 29, 1999, the district court here dismissed Hershey's suit without prejudice, stating that enactment of H.R. 3428 transformed the regulation into statutory law not subject to APA review. Hershey amended its complaint to include constitutional challenges to the enactment of H.R. 3428, but alternatively contended that H.R. 3428 simply implemented the rule so that Hershey could still bring suit under the APA to have it set aside. The government moved to dismiss, arguing that the regulation became law through the Appropriations Act. The Department further argued that even if it this were not the case, Hershey could not challenge the rule without first exhausting its administrative

remedies under the AMAA. The district court granted the Department's motion, refusing to reconsider its determination that the enactment of H.R. 3428 converted the regulation into a statute. *See Hershey Foods Corp. v. USDA,* 158 F.Supp.2d 37, 37 n.1 (D.D.C.2001).

On appeal, Hershey does not press its constitutional arguments. The company argues instead that the district court erred

in determining that "the rule originally challenged by [Hershey] has been enacted into law by the Appropriations Act." *Id.*

II.

Sections 1 and 2 of H.R. 3428, which the Appropriations Act enacted into law, deal with the rule Hershey challenged. Because of their importance to the case, both sections are quoted in their entirety in the margin.*

* 00,07 SECTION 1. USE OF OPTION 1A AS PRICE STRUCTURE FOR CLASS I MILK UNDER CONSOLIDATED FEDERAL MILK MARKETING ORDERS

(a) FINAL RULE DEFINED.–In this section, the term "final rule" means the final rule for the consolidation and reform of Federal milk marketing orders that was published in the Federal Register on September 1, 1999 (64 Fed. Reg. 47897–48021), to comply with section 143 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. § 7253).

(b) IMPLEMENTATION OF FINAL RULE FOR MILK ORDER REFORM.–Subject to subsection (c), the final rule shall take effect, and be implemented by the Secretary of Agriculture, on the first day of the month beginning at least 30 days after the date of the enactment of this Act.

(c) USE OF OPTION 1A FOR PRICING CLASS I MILK.–In lieu of the Class I price differentials specified in the final rule, the Secretary of Agriculture shall price fluid or Class I milk under the Federal milk marketing orders using the Class I price differentials identified as Option 1A "Location–Specific Differentials Analysis" in the proposed rule published in the Federal Register on January 30, 1998 (63 Fed. Reg. 4802, 4809), except that the Secretary shall include the corrections and modifications to such Class I differentials made by the Secretary through April 2, 1999.

(d) EFFECT OF PRIOR ANNOUNCEMENT OF MINIMUM PRICES.–If the Secretary of Agriculture announces minimum prices for milk under the Federal milk marketing orders pursuant to section 1000.50 of title 7, Code of Federal Regulations, before the effective date specified in subsection (b), the minimum prices so announced before that date shall be the only applicable minimum prices under Federal milk marketing orders for the

month or months for which prices have been announced.

(e) IMPLEMENTATION OF REQUIREMENT.–The implementation of the final rule, as modified by subsection (c), shall not be subject to any of the following:

(1) The notice and hearing requirements of section 8c(3) of the Agricultural Adjustment Act (7 U.S.C. § 608c(3)), reenacted with amendments by the Agricultural Marketing Agreement Act of 1937, or the notice and comment provisions of section 553 of title 5, United States Code.

(2) A referendum conducted by the Secretary of Agriculture pursuant to subsections (17) or (19) of section 8c of the Agriculture Adjustment Act (7 U.S.C. § 608c), reenacted with amendments by the Agricultural Marketing Agreement Act of 1937.

(3) The Statement of Policy of the Secretary of Agriculture effective July 24, 1971 (36 Fed. Reg. 13804), relating to notices of proposed rulemaking and public participation in rulemaking.

(4) Chapter 35 of title 44, United States Code (commonly known as the Paperwork Reduction Act).

(5) Any decision, restraining order, or injunction issued by a United States court before the date of the enactment of this Act.

SEC. 2. FURTHER RULEMAKING TO DEVELOP PRICING METHODS FOR CLASS III AND CLASS IV MILK UNDER MARKETING ORDERS.

(a) CONGRESSIONAL FINDING.–The Class III and Class IV milk pricing formulas included in the final decision for the consolidation and reform of Federal milk marketing orders, as published in the Federal Register on April 2, 1999 (64 Fed. Reg. 16025), do not adequately reflect public comment

■ There is much to be said in favor of Hershey's contention that the Appropriations Act did not convert the rule into a statute. H.R. 3428 nowhere states that the rule is enacted into statutory law. It refers instead in section 1(e) to "implementation of the final rule" and, in the same subsection, states that the "final rule" "shall not be subject to" the "notice and comment provisions" of the APA. None of this makes any sense unless what is being implemented is a rule. To state the obvious, statutes are not promulgated by agencies and they are not subject to the requirements of the APA. Section 1(e) also overrides the injunction issued in the *St. Albans Creamery* case. The court's order had enjoined the *agency* from putting its

rule into effect. If H.R. 3428 meant to enact the rule as a statute this provision would have been unnecessary. The Vermont district court issued its preliminary injunction on the basis that plaintiffs' claims—that the Secretary had violated several statutory procedural requirements—would likely be successful. *See St. Albans Coop. Creamery*, 68 F.Supp.2d at 388–90. That reasoning, and the injunction itself, could not have prevented a statute from going into effect, if the rule were intended to be such. Furthermore, the final rule had allowed the Secretary to "suspend or terminate any or all provisions" upon a finding that any provision contravened the AMAA. 64 Fed. Reg. 47,902 (to be codified at 7 C.F.R.

on the original proposed rule published in the Federal Register on January 30, 1998 (63 Fed. Reg. 4802), and are sufficiently different from the proposed rule and any comments submitted with regard to the proposed rule that further emergency rulemaking is merited.

(b) RULEMAKING REQUIRED.–The Secretary of Agriculture shall conduct rulemaking, on the record after an opportunity for an agency hearing, to reconsider the Class III and Class IV milk pricing formulas included in the final rule for the consolidation and reform of Federal milk marketing orders that was published in the Federal Register on September 1, 1999 (64 Fed. Reg. 47897–48021).

(c) TIME PERIOD FOR RULEMAKING.–On December 1, 2000, the Secretary of Agriculture shall publish in the Federal Register a final decision on the Class III and Class IV milk pricing formulas. The resulting formulas shall take effect, and be implemented by the Secretary, on January 1, 2001.

(d) EFFECT OF COURT ORDER.–The actions authorized by subsections (b) and (c) are intended to ensure the timely publication and implementation of new pricing formulas for Class III and Class IV milk. In the event the Secretary of Agriculture is enjoined or otherwise restrained by a court order from implementing a final decision within the time period specified in subsection (c), the length of time for which that injunction or other restraining order is ef-

fective shall be added to the time limitations specified in subsection (c) thereby extending those time limitations by a period of time equal to the period of time for which the injunction or other restraining order is effective.

(e) FAILURE TO TIMELY COMPLETE RULEMAKING.–If the Secretary of Agriculture fails to implement new Class III and Class IV milk pricing formulas within the time period required under subsection (c) (plus any additional period provided under subsection (d)), the Secretary may not assess or collect assessments from milk producers or handlers under section 8c of the Agriculture Adjustment Act (7 U.S.C. § 608c), reenacted with amendments by the Agricultural Marketing Agreement Act of 1937, for marketing order administration and services provided under such section after the end of that period until the pricing formulas are implemented. The Secretary may not reduce the level of services provided under that section on account of the prohibition against assessments, but shall rather cover the cost of marketing order administration and services through funds available for the Agricultural Marketing Service of the Department.

(f) IMPLEMENTATION OF REQUIREMENT.–The Implementation of the final decision on new Class III and Class IV milk pricing formulas shall not be subject to congressional review under chapter 8 of title 5, United States Code.

§ 1000.26(b)). Nothing in H.R. 3428 altered this aspect, as a result of which the Secretary retained the authority to modify or delete provisions in the rule. While it is not unheard of for Congress to allow an agency to modify the substantive portions of a statute, *see Touby v. United States,* 500 U.S. 160, 162–63, 111 S.Ct. 1752, 1754–55, 114 L.Ed.2d 219 (1991), it is far from ordinary and we would expect Congress to be more explicit than it was here if that were its intent. *Cf.* 21 U.S.C. § 811(a)-(c) (authorizing Attorney General to add or remove substances from the Controlled Substance Act schedule only after various steps including consultation with Secretary of Health and Human Services and notice-and–hearing provisions).

As against these considerations, the government points out that Congress, not the Secretary, decided upon the specific content of the Class I pricing differentials. This raises an obvious question: if Congress has dictated the classification scheme, how could it be arbitrary or capricious for an agency to implement Congress's choice? The government also thinks the legislature's override of the Vermont court's injunction against the Secretary would make little sense if Hershey, or anyone else, could just return to court to get a restraining order as soon as the President signed the Appropriations Act into law. (This has special force with respect to the Class I price differentials. It is hard to see why Congress would have intended the provision to be subject to judicial review under the APA immediately after enactment.) The government relies on Congress's specific action in altering one part of the rule to mean that Congress intended to enact the rest of it.

■ There is also the matter of section 2 of the bill, which directed the Secretary to undertake formal rulemaking on the subject of Class III and IV pricing formulas. This provision effectively removed parts of the original rule and remanded to the agency for further consideration. (Although the pricing formulas were left in a state of flux, Hershey's challenge is ripe because the provision setting the Class II price at "the advanced Class IV skim milk price ... plus 70 cents" remained intact. 64 Fed. Reg. 47,907. The Class IV milk price might change, but the difference between it and the Class II price would remain fixed at 70 cents per hundredweight.) The parties disagree on what we should infer from the bill's explicit call for further rulemaking on certain provisions of the original rule.

As the government's argument shows, the problem here is somewhat more complicated than if Congress had simply directed an agency to implement an entire regulation. H.R. 3428 did more. Congress required the Secretary to adopt a specific formula for Class I price differentials, *see* § 1(c), and to conduct rulemaking on Class III and IV prices, *see* § 2. The subject of this litigation, however, is the Class II price. On that subject, Congress did nothing but direct the rule to be implemented despite the Vermont district court's injunction. By leaving the Class II pricing provision untouched, we believe—for the reasons already given—that Congress meant to treat at least this portion of the rule, not as a statute, but as agency action, still subject to challenge under the APA. To decide otherwise would be to go beyond the words of H.R. 3428 and attribute to Congress by inference what it never made explicit.

The legislative history of H.R. 3428, to the extent there is any, supports this conclusion. Congress enacted this bill without any committee consideration and almost no floor debate. *See* 145 CONG. REC. H12,732 (daily ed. Nov. 18, 1999) (remarks of Rep. Obey) ("We have H.R. 3428, which brings several dairy authorization mea-

sures to this floor, including the Northeast Compact. That compact was slipped into the law in the first place several years ago without ever having been voted on by either body. It was slipped in by the Senate, and now we are again slipping it in without it ever having been considered by either body."). To understand the concern with the Class I pricing differentials, some history is needed. Since 1961 the price a farmer receives for milk depends in part on how far that farmer (or perhaps more accurately, the farmer's cow) lives from Eau Claire, Wisconsin. *See, e.g.,* 7 C.F.R. §§ 1001.51, 1001.52, 1001.53 (1999); 145 Cong. Rec. E2528 (daily ed. Nov. 22, 1999) (remarks of Rep. Baldwin); *see also* David Hess, *Art of Milk Pricing: It is Rocket Science,* The Record (N. N.J.), Nov. 26, 1999, at B54, *available at* 1999 WL 7119902. Under these price "differentials," dairy farmers in the eastern United States collected more per gallon produced than those in the midwest. The Secretary's final rule, promulgated in September 1999, replaced this differential formula. Section 1(c) of H.R. 3428 reinstated the "Class 1A option," which did not dramatically change the old differentials. *See* 63 Fed. Reg. 4809–10; 145 Cong. Rec. H12,734 (daily ed. Nov. 18, 1999) (remarks of Rep. Peterson). Although senators from Wisconsin and Minnesota threatened a filibuster to prevent the passage of the Appropriations Act because it included H.R. 3428, in the end it passed. *See, e.g.,* Meg Jones, *Anti-Reform Move Upsets State Dairy Farmers,* Milwaukee Journal-Sentinel, Nov. 26, 1999, *available at* 1999 WL 21553546. (Another provision of H.R. 3428 extended the life of the Northeast Dairy Compact, a USDA-approved arrangement favoring New England dairy farmers. *See* H.R. 3428, § 4.) The issues underlying the Class I pricing changes indicate that Congress sought only to legislate the terms of the Class I price *differentials,* not the entire milk marketing system. The Class II price remains the product of agency action and is subject to judicial review as such.

### III.

Our decision that the portion of the rule Hershey challenges remains a rule despite H.R. 3428 does not fully resolve the issues in this appeal. The AMAA contains an exhaustion requirement. *See Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 346, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984). It provides that "[a]ny handler subject to an order may file a written petition with the Secretary of Agriculture" challenging the order or requesting an exemption, that the Secretary "shall thereupon [provide] an opportunity for a hearing upon such petition," and that "[a]fter such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law." 7 U.S.C. § 608c(15)(A). "And so Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture." *United States v. Ruzicka,* 329 U.S. 287, 294, 67 S.Ct. 207, 210, 91 L.Ed. 290 (1946); *see also Am. Dairy of Evansville v. Bergland,* 627 F.2d 1252, 1259 (D.C.Cir.1980).

Hershey states that it is a "handler" of milk; we shall assume this to be the case. (If Hershey were a consumer of milk rather than a handler, it would not have statutory standing to sue. *See Block,* 467 U.S at 346–48, 104 S.Ct. at 2454–55.) Hershey also admits that it did not exhaust its remedies under the AMAA. But it contends that the AMAA is inapplicable because the Secretary promulgated the rule pursuant to the FAIR Act, which does not mention administrative remedies. The underlying assumption is that the FAIR Act supercedes the AMAA. But that assumption is incorrect. Hershey itself claims that the final rule violates the terms of the

AMAA. To be sure, the FAIR Act allows informal rulemaking, rather than the formal rulemaking the AMAA demanded. But the purpose is to facilitate the Secretary's efforts to "amend" the milk marketing orders the AMAA requires. *See* 7 U.S.C. § 7253(a)(1). The FAIR Act thus streamlined the procedures for *implementing* AMAA orders without disturbing, for example, the AMAA's requirement that the Secretary classify milk according to the purpose for or form in which it is used. The AMAA's exhaustion requirement remained unchanged and the final rule Hershey challenges itself states that "administrative proceedings must be exhausted before parties may file suit in court." *See* 64 Fed. Reg. 47,898. A handler of milk thus must petition the Secretary before seeking judicial review of a milk marketing order promulgated under the FAIR Act. Hershey did not undertake this required step, and therefore the dismissal of its complaint was the proper result.

*Affirmed.*