Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 13, 2004        Decided June 18, 2004

No. 03-5086

AVOCADOS PLUS INCORPORATED, ET AL.,
APPELLANTS

v.

ANN M. VENEMAN, IN HER OFFICIAL CAPACITY AS SECRETARY
OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(02cv01798)

———

*Dale E. McNiel* argued the cause for appellants. With him on the briefs was *Tracey M. Price*.

*Julie M. Carpenter* was on the brief for *amicus curiae* DKT Liberty Project in support of reversal.

———

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*August E. Flentje*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Douglas N. Letter*, Counsel.

*Richard T. Rossier* was on the brief for appellees Charlie Wolk, *et al.*

Before: EDWARDS, RANDOLPH, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The Hass Avocado Promotion, Research, and Information Act, 7 U.S.C. §§ 7801-7813, authorizes the Department of Agriculture to collect assessments from avocado growers and importers and to transfer the assessments to a board charged with promoting domestic consumption of avocados of the Hass variety. Two importers of avocados and two importers of avocado products sued in district court alleging that the Act violated their First Amendment right to be free of compelled speech.[1] The district court dismissed the complaint because the importers had not exhausted the administrative remedies the Act provides.

I.

The Avocado Act, one of more than a dozen federal statutes aimed at promoting the sale of various agricultural commodities, requires the Secretary of Agriculture to issue an implementing order that takes effect if the majority of affected growers and importers approve it in a referendum. § 7805. The order establishes a Hass Avocado Board consisting of

---

[1] Two of the plaintiffs – Avo-King International, Inc. and Sunny Avocado, Ltd. – import only processed or frozen avocado products. The Secretary has not imposed assessments on such products, and it is not clear she ever will. We therefore affirm the dismissal of the complaint with respect to these plaintiffs on the ground that their claims are, so to speak, not ripe. *See Clean Air Implementation Project v. EPA*, 150 F.3d 1200 (D.C. Cir. 1998). This opinion only concerns the remaining two importers – Avocados Plus, Inc. and LGS Specialty Sales Ltd.

industry representatives. § 7804. The function of the Board is to "administer the order," § 7804(c)(1), "develop budgets for the implementation of the order," § 7804(c)(5), and "develop" and "implement plans and projects for Hass avocado promotion, industry information, consumer information, or related research[.]" § 7804(c)(5)-(6). The Board may not implement any budget, plan or project without the prior approval of the Secretary, but these are "deemed to be approved" if the Secretary does not act within 45 days. § 7804(d)(3).

The Act also requires the Secretary to impose assessments on growers and importers to pay for the Board's activities. § 7804(h). The Board must pay 85 percent of a grower's assessments to its state grower organization, if such an organization exists. § 7804(h)(8). If an importer belongs to an importers' association, the Board must pay 85 percent of its assessment to that group. § 7804(h)(9). The Board must also reimburse the Secretary for expenses incurred conducting the referendum and supervising the Board. § 7804(i). The rest of the money pays for Board programs, although at least some of it must fund a promotion program conducted by the California Avocado Commission. *See* § 7804(e)(1) (requiring Board to enter contract with "avocado organization . . . in a State with the majority of Hass avocado production in the United States"); § 7801(a)(2) (stating that "virtually all domestically produced avocados for the commercial market are grown in the State of California").

Under the § 7806 of the Act, any "person subject to an order" may file a petition with the Secretary "stating that the order, any provision of the order, or any obligation imposed in connection with the order is not in accordance with the law; and . . . requesting a modification of the order or an exemption from the order." § 7806(a)(1). The Secretary must rule on the petition after a hearing. § 7806(a)(3). The Act further provides that the "district courts of the United States . . . shall have jurisdiction to review the ruling of the Secretary on the petition[,]" § 7806(b)(1), and must remand it if it "is not in accordance with law[.]" § 7806(b)(3).

Rather than invoking § 7806, the importers filed a complaint in district court claiming that the mandatory assessments were unconstitutional and seeking an injunction against enforcement of the Act.[2]  The importers relied principally on *United States v. United Foods, Inc.*, 533 U.S. 405 (2001), in which the Supreme Court ruled that an identical provision in the Mushroom Promotion, Research, and Consumer Information Act, 7 U.S.C. §§ 6101-6112, violated the free speech rights of mushroom growers by forcing them to pay for speech with which they disagreed.

The government had argued in *United Foods* that the mushroom promotion program was government speech, and that the government therefore could force growers to pay for it.  The Supreme Court refused to consider the argument because the government had not raised it in the court of appeals.  533 U.S. at 416-17.  *United Foods* triggered a series of challenges against other agricultural commodity promotion programs.  In each case the government relied on the government speech defense and in each case the court of appeals rejected it. *See Cochran v. Veneman*, 359 F.3d 263 (3d Cir. 2004) (dairy); *Michigan Pork Producers Ass'n v. Veneman*, 348 F.3d 157 (6th Cir. 2003) (pork); *Livestock Mktg. Ass'n v. USDA*, 335 F.3d 711 (8th Cir. 2003), *cert. granted*, 2004 WL 303634 (May 24, 2004) (beef); s*ee also Pelts & Skins, LLC v. Landreneau*, 365 F.3d 423 (5th Cir. 2004) (striking down state alligator products promotion program); *but see Charter v. USDA*, 230 F. Supp. 2d 1121 (D. Mont. 2002) (sustaining beef program as government speech).

The avocado importers moved for a preliminary injunction.  The government opposed the motion, arguing that the avocado program was government speech.  The government also moved to dismiss the complaint for failure to exhaust administrative remedies.  The district court initially addressed the importers' First Amendment claims, holding that they were

---

[2] It is unclear whether, if the importers can go forward with their suit, they should be relegated to an as-applied rather than a facial challenge to the Act.

not required to exhaust the administrative remedy provided in § 7806. Then, in response to a government motion, the court reconsidered its decision, ruled that importers must exhaust their administrative remedy, and dismissed the complaint for lack of subject matter jurisdiction.

## II.

The word "exhaustion" now describes two distinct legal concepts. The first is a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court. *See generally* 2 RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 15.2 (4th ed. 2002). We will call this doctrine "non-jurisdictional exhaustion." Non-jurisdictional exhaustion serves three functions: "giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]" *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409 (D.C. Cir. 1998); *McCarthy v. Madigan*, 503 U.S. 140, 145-46 (1992).

Occasionally, exhaustion will not fulfill these ends. There may be no facts in dispute, *see McKart v. United States*, 395 U.S. 185, 198 n.15 (1969), the disputed issue may be outside the agency's expertise, *see id.* at 197-98, or the agency may not have the authority to change its decision in a way that would satisfy the challenger's objections, *see McCarthy*, 503 U.S. at 147-48. Also, requiring resort to the administrative process may prejudice the litigants' court action, *see id.* at 146-47, or may be inadequate because of agency bias, *see id.* at 148-49. In these circumstances, the district court may, in its discretion, excuse exhaustion if "the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* at 146 (quoting *West v. Bergland*, 611 F.2d 710, 715 (8th Cir. 1979)).

The second form of exhaustion arises when Congress requires resort to the administrative process as a predicate to judicial review. This "jurisdictional exhaustion" is rooted, not

in prudential principles, but in Congress' power to control the jurisdiction of the federal courts. *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 963-64 (D.C. Cir. 1999). Whether a statute requires exhaustion is purely a question of statutory interpretation. *See McCarthy,* 503 U.S. at 144. If the statute does mandate exhaustion, a court cannot excuse it. *See Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 13 (2000).[3]

While the existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry, jurisdictional exhaustion requires much more. In order to mandate exhaustion, a statute must contain " '[s]weeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975); 2 Pierce, Administrative Law Treatise § 15.3, at 986. We presume exhaustion is non-jurisdictional unless "Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision," *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984).

For example, the Supreme Court decided that the Social Security Act mandated exhaustion in light of this statutory language: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employer thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim

---

[3] General federal question jurisdiction under 28 U.S.C. § 1331 does not empower the court to proceed to the merits in a jurisdictional exhaustion case. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984). In a non-jurisdictional exhaustion case, if the court decides not to require exhaustion, the case may proceed under § 1331. If the court rules that the plaintiff must exhaust, and the plaintiff proceeds to do so, judicial review of the agency's decision will be under the relevant provision for review of that agency's action.

arising under this subchapter." 42 U.S.C. § 405(h). *See Salfi*, 422 U.S. at 756-67. Similarly, we found jurisdictional exhaustion in the following language from the Federal Power Act: "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. . . . No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 16 U.S.C. § 8251. *See Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC*, 876 F.2d 109, 112–13 (D.C. Cir. 1989).

The Avocado Act contains no comparable "sweeping and direct" language. It neither mentions exhaustion nor explicitly limits the jurisdiction of the courts. It merely creates an administrative procedure for challenging the Secretary's orders. In this respect, the Avocado Act is therefore more like the statute we considered in *Lutheran Social Services*. In that case, we excused a party challenging an EEOC subpoena from exhausting administrative remedies, even though the statute creating the subpoena power provided such a remedy. We rejected the EEOC's argument that exhaustion was jurisdictional, observing that "nowhere does [the statute] even imply, much less expressly state, that courts lack jurisdiction to hear objections not presented to the Commission." 186 F.3d at 963.

The government argues that *United States v. Ruzicka*, 329 U.S. 287 (1946), compels the opposite conclusion. In *Ruzicka*, the Supreme Court ruled that milk handlers challenging marketing orders issued pursuant to the Agricultural Marketing Agreement Act of 1937, ch. 296, 50 Stat. 246, must exhaust administrative remedies before coming to court. The relevant provisions of the AMAA are nearly identical to those in the Avocado Act. *Compare* 7 U.S.C. § 608c(6) & (15) *with* 7 U.S.C. §§ 7806-7807(a). To the government, it follows that the Avocado Act mandates exhaustion.

Two unstated premises are behind the government's argument. The first is that when Congress uses the language of one statute in another statute it usually intends both statutes to have the same meaning. *See Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*, 917 F.2d 581, 582-83 (D.C. Cir. 1990). The second is that Congress knew of the interpretation given the earlier statute in *Ruzicka.* For this proposition, the government could have cited *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-98 (1979), in which the Court endorsed the assumption that Congress knows "the law"– by which the Court meant judicial decisions. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). The government's argument has some force but we believe there is an equally forceful argument on the other side. If we are to assume that Congress knew of the law handed down in *Ruzicka*, we should also assume that Congress knew of the law set forth in *Salfi*, *McCarthy, I.A.M.*, and other cases distinguishing non-jurisdictional and jurisdictional exhaustion. In other words, Congress' failure to include in § 7806 of the Avocado Act the sort of "sweeping and direct" language mandating exhaustion and thereby depriving the courts of jurisdiction tends to indicate that we are dealing here with non-jurisdictional exhaustion.

The most telling point against the government's position is that the *Ruzicka* Court did not find the exhaustion requirement in the text of the AMAA's provisions cited above and duplicated in § 7806. Standing alone that text was, as the Court saw it, inconclusive, which is why the Court stated that "Congress did not say in words" that exhaustion was mandatory. 329 U.S. at 292. In nevertheless requiring exhaustion, the Court looked elsewhere, relying on the complex statutory enforcement scheme in the AMAA, a scheme Congress would not have wanted disrupted by "the contingencies and inevitable delays of litigation," *id.* at 292-93. Unlike the AMAA, the Avocado Act does not provide for comprehensive market regulation that could be disrupted by ill-timed judicial inter-

ference. It simply transfers money from growers and importers to the Board. *Cf. United Foods*, 533 U.S. at 411-12 (distinguishing the AMAA, where "the mandated assessments for speech were ancillary to a more comprehensive program restricting marketing autonomy," from the Mushroom Act, where "advertising itself . . . is the principal object of the regulatory scheme"). One therefore cannot conclude much of anything about exhaustion from the apparent fact that Congress decided to use the language of the AMAA review provisions as a model for the Avocado Act.

We also question the Secretary's characterization of *Ruzicka* as a case in which the statutory language made exhaustion jurisdictional. Certainly, under the modern precedents discussed above, the AMAA's lack of anything close to explicit jurisdictional language would render any exhaustion requirement non-jurisdictional. The fact that *Ruzicka* focused on congressional intent tells us little, for even in non-jurisdictional exhaustion cases courts owe "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court." *McCarthy*, 503 U.S. at 144. The *Ruzicka* Court did not distinguish between jurisdictional and non-jurisdictional exhaustion because the current doctrinal framework did not exist at the time. The Court itself recognized the limited precedential effect of its holding: "Certainly the recent growth of administrative law counsels against generalizations regarding what is compendiously called judicial review of administrative action. And so we deem it desirable, in a case like this, to hug the shore of the precise problem before us in relation to the provisions of the particular Act immediately relevant." 329 U.S. at 295.

The district court relied primarily on *Gallo Cattle Co. v. USDA*, 159 F.3d 1194 (9th Cir. 1998), which construed language in the Dairy and Tobacco Adjustment Act of 1983, 7 U.S.C. § 4509 ("the Dairy Act"), identical in all relevant respects to § 7806. The court of appeals found that the language mandated exhaustion and that the district court had

no jurisdiction to consider the plaintiff's challenge until it exhausted administrative remedies. 159 F.3d at 1197–98. Despite the Ninth Circuit's terminology, *Gallo Cattle* was not so much an exhaustion case as a case about finality. *See* 2 PIERCE, ADMINISTRATIVE LAW TREATISE § 15.1, at 966 ("Finality and exhaustion are particularly difficult to distinguish."). The plaintiffs had already filed a petition with the Secretary challenging the order. A judicial officer had denied the petition, and the plaintiffs were asking the court for interim relief pending their appeal to the Secretary. Under the statute, only the Secretary's ruling was final and subject to judicial review. *See* 7 U.S.C. § 4509(a)-(b). The court therefore ruled that there was no jurisdiction to consider the challenge to the judicial officer's ruling *pursuant to § 4509*. 159 F.3d at 1198. This does not necessarily mean exhaustion would be jurisdictional if the plaintiffs had brought their challenge directly to district court. True, the *Gallo Cattle* court stated in dicta that the Dairy Act mandated exhaustion, citing a Ninth Circuit case interpreting the AMAA. *Id.* at 1197 (citing *Rasmussen v. Hardin*, 461 F.2d 595, 597-98 (9th Cir. 1972)). But that case, like *Ruzicka*, did not say whether the AMAA exhaustion requirement was jurisdictional or non-jurisdictional.

While the matter is not free from doubt, we therefore hold – particularly in light of our decision in *Lutheran Social Services* – that the language of the Avocado Act does not make exhaustion jurisdictional.


## III.

Our precedent demands that we review non-jurisdictional exhaustion decisions for abuse of discretion. *See Ogden v. Zuckert*, 298 F.2d 312, 317 (D.C. Cir. 1961). Whether in this case the district court thought it had discretion is not so clear. The first part of the court's analysis clearly states that the Avocado Act "mandates exhaustion," and that "Congress has given the Court *jurisdiction* over <u>only</u> 'the ruling of the Secretary.'" J.A. 107-08 (italics added, underline in the

original). Having concluded that the Avocado Act mandated exhaustion, the court could have stopped there, but did not. In the next section of its opinion, the court – responding to the importers' argument that the constitutional nature of their claim should excuse exhaustion – explained how requiring exhaustion would serve the policies underlying the doctrine. In doing so, the court applied a portion of the non-jurisdictional exhaustion analysis. This would have been unnecessary if the court believed the statute mandated exhaustion as a jurisdictional matter. *See Salfi*, 422 U.S. at 762-64 (applying jurisdictional exhaustion to constitutional claim). One could argue, therefore, that notwithstanding the district court's earlier absolute language, and its dismissal of the complaint for lack of subject matter jurisdiction, it was requiring exhaustion as a matter of discretion.

Despite these uncertainties we believe the district court thought it had no power to excuse exhaustion. Otherwise there is no explaining why the court did not complete the non-jurisdictional exhaustion analysis by "balanc[ing] the interest of the individual in retaining prompt access to a federal judicial forum against the countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 147. "Application of this balancing principle is intensely practical . . . because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative remedy." *Id.* (quotation marks and citations omitted). We see no signs the district court attempted to make either of these inquiries.

"[T]he district court was entitled to determine, in the first instance, whether exhaustion was required and, if so, whether, in its discretion, it should retain jurisdiction pending exhaustion. Because the district [court] was apparently unaware that these decisions were open to [it], we find it appropriate to vacate [its] order dismissing the action and to remand the case so that [the court] may address them."

*Montgomery v. Rumsfeld*, 572 F.2d 250, 254 (9th Cir. 1978). *See also Ogden*, 298 F.2d at 317.[4]

*So ordered.*

---

[4] In many cases the time limits for challenging an order before the agency may be relatively short. In non-jurisdictional (and jurisdictional) exhaustion cases, those who bypass administrative remedies and bring an action in court therefore run a substantial risk. If the court decides that the plaintiff had to exhaust, by then it may be too late for the plaintiff to seek relief from the agency. While unusual circumstances may warrant dispensing with exhaustion when the time limits have run, *see Bowen v. City of New York*, 476 U.S. 467, 482–86 (1986), we held in *American Federation of Government Employees v. Loy*, 367 F.3d 932, 936 (D.C. Cir. 2004), that the court will not "excuse non-compliance with the requirement that one must exhaust administrative remedies on the basis that the party failed to comply." *See Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 968 (D.C. Cir. 1990).

The importers in this case are fortunate. The time limit in § 7806(a)(4) of the Avocado Act is generous. They have until early September 2004 to file a petition with the Secretary challenging the order. *See* § 7806(a)(4). They should be allowed to do so without prejudicing their right to argue to the district court that exhaustion should be excused.