# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 25, 2006　　　Decided October 31, 2006

No. 06-5010

EDALEEN DAIRY, LLC,
APPELLANT

v.

MICHAEL JOHANNS, SECRETARY, UNITED STATES
DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02442)

———

*Benjamin F. Yale* argued the cause for appellant. With him on the briefs were *Kristine H. Reed* and *Ryan K. Miltner*.

*Mark R. Freeman*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, and *Michael S. Raab*, Attorney.

*Charles M. English, Jr.* argued the cause for appellees United Dairymen of Arizona, et al. With him on the brief were *Wendy M. Yoviene* and *Sara R. Pikofsky*.

*Marvin Beshore* was on the brief for appellee Dairy Farmers of America, Inc.

Before: SENTELLE, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Edaleen Dairy, LLC ("Edaleen") appeals from a district court decision denying its motion for a preliminary injunction. Edaleen seeks to enjoin the Secretary of Agriculture from enforcing a new rule that changed the regulatory status of "producer-handlers" of milk, alleging that the rule exceeds the Secretary's authority under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601-674 (2000) ("AMAA"). We need not reach the question whether Edaleen is entitled to preliminary injunctive relief because Edaleen has failed to exhaust its administrative remedies as required by the AMAA.

## I.

Milk markets in the United States are governed by a complex system of price controls that dates back to the Depression era. The AMAA authorizes the Secretary of Agriculture to issue "milk marketing order[s]" to regulate milk sales in different regions of the country. 7 U.S.C. § 608c(5).

Under a typical milk marketing order, a "producer" (*i.e.*, dairy farmer) supplies raw milk to a "handler" (*i.e.*, processor or distributor), and the handler pays money into a "producer settlement fund" at fixed prices based on the intended use of the milk. *See, e.g., Alto Dairy v. Veneman,* 336 F.3d 560, 562-63 (7th Cir. 2003). Handlers using their milk for "high-value" uses, such as fluid milk, must pay higher prices than handlers that engage in "low-value" uses, such as processing of butter and

cheese. *Id.* The money that handlers pay into the producer settlement fund is then redistributed to milk producers at a uniform "blend price" per quantity of milk sold. *See* 7 U.S.C. § 608c(5)(B)(ii). This system ensures that all dairy farmers will receive the same price for their raw milk whether they sell to high-value handlers or low-value handlers.

A complication arises, however, when the same firm is both a producer and a handler. In such cases, there is no opportunity for the producer-handler to pay into the producer settlement fund because there is no intermediate sale of raw milk. The producer-handler simply processes the milk that it has already produced; it need not purchase milk from other dairy farmers. Historically, the Secretary of Agriculture has exempted producer-handlers from the pooling and pricing requirements of milk marketing orders. *See* Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas; Final Decision on Proposed Amendments to Marketing Agreement and to Orders, 70 Fed. Reg. 74,166, 74,167-68 (Dec. 14, 2005) (to be codified at 7 C.F.R. pts. 1124, 1131) ("*Proposed Rule*").

Because they could process and sell high-value milk products without having to pay into the pool, producer-handlers often enjoyed a significant competitive advantage in milk markets. Initially, this raised little concern because most producer-handlers were small family operations that had little effect on the market. In recent years, however, several producer-handlers have grown much larger, which had a twofold effect on the pooling system. First, because they did not have to contribute to the producer settlement fund, the large producer-handlers could sell their milk at lower prices than their regulated rivals, thus gaining sales and market share. *See Proposed Rule*, 70 Fed. Reg. at 74,186-88. Second, the amount of money in the producer settlement fund was shrinking because fully-regulated handlers – who did contribute to the pool – were losing business

to the unregulated producer-handlers. *Id.*

In response to these concerns, the Secretary of Agriculture initiated a formal, on-the-record rulemaking to determine whether the regulatory status of producer-handlers should be changed in the Pacific Northwest and Arizona-Las Vegas marketing areas. After two years of hearings, testimony, and data analysis, the Secretary issued a Recommended Decision on April 7, 2005. Recommended Decision and Opportunity to File Written Exceptions on Proposed Amendments, 70 Fed. Reg. 19,636 (Apr. 13, 2005). As required by the AMAA, this proposed rule was then approved by a referendum of milk producers in January 2006, after which it became final. *See* Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas; Order Amending the Orders, 71 Fed. Reg. 9430 (Feb. 24, 2006) (codified at 7 C.F.R. pts. 1124, 1131 (2006)) ("*Final Rule*").

The final rule modified the definition of "producer-handler" to exclude dairies that produce, process, and distribute more than three million pounds of fluid milk per month within a given marketing area. 7 C.F.R. §§ 1124.10, 1131.10. These large producer-handlers – such as appellant Edaleen – are now required to pay into the producer settlement fund to the extent that their use-value of milk exceeds the blend price in a given region. *See id.* § 1124.71 (explaining how handler payments are calculated in the Pacific Northwest Marketing Area). The decision to eliminate the exemption for large producer-handlers was based upon evidence of "disorderly marketing conditions" – namely, that the large producer-handlers were obtaining a "competitive sales advantage" over fully-regulated handlers, and were causing a "measurabl[e] and significant[]" decrease in the blend price being paid to regulated producers. *Proposed Rule*, 70 Fed. Reg. at 74,186-88.

Edaleen is a large producer-handler that lost its exemption from the pricing-pooling system as a result of this rulemaking. Edaleen sued the Secretary of Agriculture in U.S. District Court for the District of Columbia to enjoin enforcement of the new rule on the grounds that it exceeded the Secretary's authority under the AMAA.

The district court denied preliminary injunctive relief in a statement read from the bench. Transcript of Hearing at 75-99, *Edaleen Dairy, LLC v. Johanns*, No. 05-cv-2442 (D.D.C. Dec. 29, 2005). First, the court noted that the case was probably not ripe at that time because the rule had not yet been approved by the required producer referendum. *Id.* at 81-83. This referendum has since been held, so ripeness is no longer an issue in this case. The district court then held that the arguments raised by Edaleen were "the very kind of thing that can be raised in the administrative process" and thus the court should not "hear this case before [plaintiffs] have exhausted their administrative remedies." *Id.* at 84-86. Finally, the district court also concluded that the plaintiffs were not entitled to a preliminary injunction. The court held that it was unlikely that this order exceeded the Secretary's statutory authority under the AMAA, and noted that the alleged injury – overpayment of funds into the pool – was "economic loss" that could be adequately addressed in a suit for damages. *Id.* at 86-94. The court also concluded that other producers were likely to be harmed if large producer-handlers like Edaleen did not begin to pay into the producer settlement fund. *Id.* at 95-96. Thus, the district court denied Edaleen's motion for a preliminary injunction.

Edaleen sought timely appeal, and now contends that the district court abused its discretion in denying preliminary injunctive relief.

## II.

The first – and only – issue that we must address is whether Edaleen, a producer-handler of milk, may challenge the provisions of a milk marketing order in district court before exhausting its administrative remedies under the AMAA. We hold that it may not.

## A.

The Agricultural Marketing Agreement Act provides for review of the Secretary's milk marketing orders as follows:

> (A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such a petition . . . . After such hearing, the Secretary shall make a ruling upon the prayer of such petition, which shall be final, if in accordance with law.
>
> (B) The District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling.

7 U.S.C. § 608c(15).

The Supreme Court has held that these provisions of the AMAA impose a mandatory administrative exhaustion

requirement upon milk handlers seeking to challenge the provisions of a milk marketing order. *United States v. Ruzicka*, 329 U.S. 287 (1946). In *Ruzicka*, the federal government sued a handler to enforce a milk marketing order, and the handler attempted to argue in defense that the order was unlawful. The Supreme Court, in an opinion by Justice Frankfurter, declined to consider this argument because the handler had not yet raised it in an administrative review proceeding. The Court stated:

> And so Congress has provided that *the remedy in the first instance must be sought from the Secretary of Agriculture.* It is on the basis of his ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts.

*Id.* at 294 (emphasis added). Similarly, in *Block v. Community Nutrition Institute*, 467 U.S. 340, 346 (1984), the Court explained the AMAA's judicial review provisions as follows:

> Section 608c(15) requires handlers first to exhaust the administrative remedies made available by the Secretary . . . . After these formal administrative remedies have been exhausted, handlers may obtain judicial review of the Secretary's ruling . . . .

This Court has also held on several occasions that handlers must exhaust their administrative remedies prior to seeking judicial review of a milk marketing order. *See Hershey Foods Corp. v. Dep't of Agric.*, 293 F.3d 520, 526-27 (D.C. Cir. 2002); *Am. Dairy of Evansville v. Bergland*, 627 F.2d 1252, 1259 (D.C. Cir. 1980); *Benson v. Schofield*, 236 F.2d 719, 722 (D.C. Cir. 1956).

There is, however, a narrow exception to the exhaustion requirement for certain milk *producers* who seek to challenge a milk marketing order. In *Stark v. Wickard*, 321 U.S. 288, 289

(1944), several milk producers sued the Secretary of Agriculture, alleging that the Secretary was "unlawfully diverting funds" from the producer settlement pool. The Supreme Court held that these producers could seek judicial review of the Secretary's actions in district court even though they had not sought administrative relief first. *Id.* at 307-11. However, *Stark* was a limited holding that turned on the unique circumstances of that case. As the Court explained:

> When . . . *definite personal rights* are created by federal statute . . . , the silence of Congress as to judicial review is, at any rate *in the absence of an administrative remedy*, not to be construed as a denial of authority to the aggrieved person to seek appropriate relief in the federal courts in the exercise of their general jurisdiction.

*Id.* at 309 (emphasis added). Thus, the direct right of action that was allowed in *Stark* turned on two key factors. First, the Court emphasized that the producers were not merely objecting to a regulation; rather, they were suing to protect their "definite personal rights" in the settlement pool fund. *Id.* at 308 ("It is because every dollar of deduction comes from the producer that he may challenge the use of the fund."). Second, the Court stated that these producers were able to sue directly in district court because they did not have access to an administrative remedy under the AMAA. *Id.* at 309. *See also Ruzicka*, 329 U.S. at 295 (holding that the *Stark* direct right of action is not available to handlers because they have an administrative remedy under the AMAA). Overall, while handlers are *always* required to exhaust their administrative remedies prior to seeking judicial review, *id.* at 294, producers may be able to avoid the exhaustion requirement if they are suing to protect "definite personal rights" for which there is no access to an administrative remedy. *Stark*, 321 U.S. at 309.

Thus, with respect to producer-handlers, the crucial question is whether a producer-handler is bringing suit in its capacity as a producer or as a handler. If a producer-handler asserts an injury in its capacity as a handler, then it is bound by the administrative exhaustion requirements of the AMAA. For example, in *Rasmussen v. Hardin*, 461 F.2d 595, 596-97 (9th Cir. 1972), a producer-handler brought suit in district court to challenge a rule that required producer-handlers to pay into the settlement pool if they purchased powdered milk from other producers and reconstituted the powder into fluid milk. This affected the plaintiffs' interests as handlers because it required them to make payments into the settlement fund for their use-value of milk, which is an obligation that is *only* borne by handlers. Accordingly, the Ninth Circuit affirmed the district court's dismissal of the case because the plaintiffs had not exhausted their administrative remedies before bringing suit. *Id.* at 598. In contrast, when a producer-handler asserts an injury in its capacity as a producer, then it may be able to immediately bring suit in district court. In *Dairylea Cooperative v. Butz*, 504 F.2d 80, 82-83 (2d Cir. 1974), a cooperative that both produced and handled milk brought suit in district court alleging that a milk marketing order unlawfully reduced the amount of money that producers would receive for certain types of milk sales. The court held that this producer-handler was suing to protect its interests as a producer:

> The concern of Dairylea in this action is not the money which it paid into the Producer-Settlement Fund . . . , but with the money collected on behalf of its producer-members . . . , which will increase if the action succeeds.

*Id.* at 83. Only producers are eligible to receive money from the settlement fund, and thus any action by the Secretary that reduces the amount of money in the fund will cause injury exclusively to producers. Thus, the Second Circuit held that the

plaintiff was not required to exhaust administrative remedies before bringing suit. *Id.*

Here, Edaleen is clearly bringing suit in its capacity as a handler. Prior to the adoption of the rule being challenged in this case, producer-handlers were fully exempt from the pricing and pooling provisions of the milk marketing orders. *See Proposed Rule*, 70 Fed. Reg. at 74,167. The final rule eliminates this exemption for producer-handlers with in-area route disposition of more than three million pounds of milk per month. *Final Rule,* 71 Fed. Reg. at 9430. In other words, large producer-handlers – just like all other milk handlers – must now *pay* into the producer settlement fund to the extent that their use-value of milk exceeds the blend price in a given region. *See, e.g.*, 7 C.F.R. § 1124.71 (explaining how handler payments are calculated in the Pacific Northwest Marketing Area). As the Final Rule states, "[t]he amendments will place entities currently considered to be producer-handlers . . . *on the same terms as all other fully regulated handlers*." 71 Fed. Reg. 9430 (emphasis added). Edaleen is not challenging the amounts being paid *out* of the pool, nor is it challenging the Secretary's management of funds in the pool – arguments that would be raised if it were suing in its capacity as a producer. *Cf. Stark*, 321 U.S. at 308-10 (holding that a producer may seek immediate judicial review of the Secretary's deductions from the settlement pool funds); *Dairylea*, 504 F.2d at 83 (noting that a producer-handler that disputes the amount of money being received from the fund is suing in its capacity as a producer). Rather, Edaleen objects to the new rule because it will now be forced to *pay* into the producer settlement fund. *See* Appellant's Br. at 32 (arguing that Edaleen has suffered irreparable injury because it must now pay "hundreds of thousands of dollars per month and millions of dollars per year" into the settlement fund). Producers do not pay into the settlement fund; only handlers bear this obligation. Thus, we hold that Edaleen has brought this suit in its capacity

as a handler, and therefore Edaleen was required to exhaust its remedies under the AMAA before seeking judicial review.

We emphasize that this holding is entirely consistent with the Seventh Circuit's decision in *Alto Dairy v. Veneman*, 336 F.3d 560 (7th Cir. 2003). In that case, the court held that the plaintiffs – a group of producers and producer-handlers – were entitled to judicial review even though they had not sought administrative relief prior to bringing suit. *Id.* at 568-69. The plaintiffs argued that a new rule – which limited when producers could qualify for the blend price in certain marketing areas – was adopted without proper notice from the Secretary. *Id.* at 564-65. Given that the plaintiffs were seeking *access* to pooling funds, they were clearly bringing suit in their capacity as producers. Indeed, the Seventh Circuit specifically noted that the plaintiffs "have no quarrel *as handlers* with the order." *Id.* at 569. Thus, the plaintiffs in *Alto Dairy* were not bound by the AMAA's exhaustion requirement. In contrast, Edaleen seeks relief in its capacity as a handler, and therefore it is required to exhaust administrative remedies prior to challenging the Secretary's actions in district court.

**B.**

Edaleen argues that we should excuse the exhaustion requirement in this case. It contends that the issue was "fully framed" in the rulemaking process, that the Secretary's "full expertise" has already been brought to bear on this issue, and that it would be "utterly duplicative" to require Edaleen to seek administrative review prior to bringing suit. Appellant's Br. at 41-42. There is no need to address these arguments, however, because courts have held on numerous occasions that the AMAA's exhaustion requirement is mandatory. Thus, we hold that Edaleen may not be excused from complying with this requirement.

Since the AMAA was enacted in 1937, courts have repeatedly held that its exhaustion requirement is mandatory, and that aggrieved handlers may not seek judicial review of milk marketing orders until they have exhausted their administrative remedies. *See Block*, 467 U.S. at 346 (stating that "handlers may obtain judicial review" only after exhausting the AMAA's "formal administrative remedies"); *Ruzicka*, 329 U.S. at 294 (holding that "resort may be had to the courts" only after administrative remedies have been exhausted); *Hershey Foods*, 293 F.3d at 527 ("A handler of milk thus *must* petition the Secretary before seeking judicial review of a milk marketing order . . . .") (emphasis added); *United States v. United Dairy Farmers Ass'n*, 611 F.2d 488, 490 (3d Cir. 1979) ("It has long been established that the administrative relief provided in the [AMAA] is not merely permissive but *exclusive* in the first instance: any challenge to the applicability of an order *must* first be made administratively.") (emphasis added); *Dairylea Coop.*, 504 F.2d at 80 (holding that "handlers may apply for judicial review of agricultural orders only after exhausting their administrative remedies").

Consistent with this long line of cases, we hold that the AMAA's administrative appeal process is a *mandatory* procedure that handlers must follow prior to seeking judicial review of a milk marketing order. Therefore, we decline to excuse the exhaustion requirement in this case.

## III.

Although Edaleen is both a producer and a handler, in this case, it is suing to protect its interests as a handler. A handler may not seek judicial review of a milk marketing order until it has exhausted its administrative remedies under the AMAA. Edaleen has failed to pursue these administrative remedies. Therefore, we remand the case to the district court with

instructions to dismiss the complaint.

*So ordered.*