# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 7, 2008　　　　Decided April 3, 2009

No. 07-5403

HEIN HETTINGA, ET AL.,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01637)

———

*Alfred W. Ricciardi* argued the cause for appellants. With him on the briefs was *John F. Cooney*.

*Nicholas Bagley*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Gregory G. Katsas*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Michael S. Raab*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Charles M. English Jr.* was on the brief for *amici curiae* Dairy Institute of California, et al. in support of appellee.

Before: ROGERS, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Hein and Ellen Hettinga, owners of Sarah Farms, and co-owners with their son Gerben of GH Dairy, appeal the dismissal of their complaint challenging the constitutionality of two amendments to the Agricultural Marketing Agreement Act ("AMAA"). The Hettingas alleged that the amendments, which subjected certain large producer-handlers of milk to contribution requirements applicable to milk handlers, were invalid as a bill of attainder and a violation of equal protection and due process. The question on appeal is whether the Hettingas were required to exhaust administrative remedies before filing suit against the United States. We hold that exhaustion was neither jurisdictionally nor prudentially required. The plain text of the exhaustion requirement in the AMAA does not apply to constitutional challenges to the AMAA itself, as distinct from challenges to regulatory orders and attendant obligations. Because the Hettingas' objections do not involve an alleged defect in a marketing order and the Secretary lacks the power to provide a remedy, requiring exhaustion as a prudential matter would not protect administrative agency authority or advance judicial efficiency. Accordingly, we reverse.

**I.**

The milk business is highly regulated by the Secretary of Agriculture pursuant to the AMAA, 7 U.S.C. §§ 601-674. *See Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778, 779 (D.C. Cir. 2006). The Secretary issues milk marketing orders that regulate payments made from milk handlers (processors and distributors) to milk producers (farmers). *Id.* In order to protect producers from variations in prices, handlers are required to pay into a pool

for milk bought from producers; the funds in the pool are distributed on a pro rata basis to the producers. *Id.*; *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 341-43 (1984).

Until 2005, the Secretary had exempted "producer-handlers" — i.e., dairy farms that produce, process, and distribute milk within a single vertically-integrated operation — from the pooling requirements and pricing restrictions of milk marketing orders. *See Edaleen Dairy*, 467 F.3d at 780. This gave market power to the producer-handlers who could afford to undercut the prices charged by participants in the pooling system, but most producer-handlers were small family operations that had little effect on the market. *Id.* Some producer-handlers grew quite large, however, and the Secretary initiated a formal rulemaking to determine whether to change the status of producer-handlers in two regions, including the Arizona-Las Vegas marketing area in which Sarah Farms is located. *Id.* As a result, in 2006 the Secretary promulgated a rule requiring producer-handlers that produced over 3 million pounds of fluid milk per month within a marketing area to pay into the producer settlement fund if they sold milk at a price higher than that paid by handlers to producers. *Id.*; *Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas: Order Amending the Orders*, 71 Fed. Reg. 9430 (Feb. 24, 2006) (codified at 7 C.F.R. §§ 1124.10, 1124.71, 1131.10, 1131.71).

Sarah Farms is a producer-handler. Its owners, the Hettingas, are also partners with their son, Gerben, in GH Dairy, a handler dairy in Arizona that sells milk exclusively in California. On March 15, 2006, the Hettingas sought an injunction from the district court in the Northern District of Texas against enforcement of the new rule, alleging that it was arbitrary and capricious and that the Secretary lacked authority over producer-handlers that sell only milk produced from their own cows. Another large producer-handler sought an injunction

from the district court of the District of Columbia, alleging the Secretary lacked authority to promulgate the rule, and on appeal this court held the producer-handler must first exhaust administrative remedies. *Edaleen Dairy*, 467 F.3d at 783. Before the Texas district court heard arguments in the Hettingas' case, Congress amended the AMAA.

The Milk Regulatory Equity Act of 2005, Pub. L. No. 109-215, 120 Stat. 328 (2006) (codified at 7 U.S.C. § 608c) ("MREA"), codified the Secretary's revocation of the exemption for large producer-handlers in the Arizona-Las Vegas marketing area, but not the Pacific Northwest area, and also made subject to regulation producers like GH Dairy that are located in the marketing area and sell milk to areas that are unregulated by marketing orders, such as California. 7 U.S.C. § 608c(5)(M), (N), note (2006) ("the Amendments").[1] On September 22, 2006,

---

[1] The MREA amended section 608c(5) of the AMAA to add, as relevant here, subparagraphs M and N. Subparagraph M, "Minimum Milk Prices for Handlers," provides:

> (i) Application of minimum price requirements. – Notwithstanding any other provision of this section, a milk handler described in clause (ii) shall be subject to all of the minimum and uniform price requirements of a Federal milk marketing order issued pursuant to this section applicable to the county in which the plant of the handler is located, at Federal order class prices, if the handler has packaged fluid milk product route dispositions, or sales of packaged fluid milk products to other plants, in a marketing area located in a State that requires handlers to pay minimum prices for raw milk purchases.

Exempted from Clause (i): is

the Hettingas filed a complaint in the district court here alleging that the Amendments are unconstitutional as a bill of attainder and a denial of due process and equal protection because only the Hettingas are subject to them. The district court dismissed the complaint for lack of subject matter jurisdiction upon ruling that "any challenge to the validity of the [Amendments] is essentially a challenge to [an] order by the Secretary," and the Hettingas were therefore required to exhaust administrative remedies. *Hettinga v. United States*, 518 F. Supp. 2d. 58, 61 (D.D.C. 2007). The Hettingas appeal, and our review is *de novo*. *Munsell v. Dep't of Agric.*, 509 F.3d 572, 578 (D. C. Cir. 2007).

## II.

Parties have long been required to exhaust administrative remedies before seeking relief from federal courts, *McCarthy v.*

---

(II) a producer-handler . . . for any month during which the producer-handler has route dispositions, and sales to other plants, of packaged fluid milk products equally less than 3,000,000 pounds of milk . . . .

Subparagraph (N) provides:

Notwithstanding any other provision of this section, no handler with distribution of Class I milk products in the marketing area described in Order No. 131 shall be exempt during any month from any minimum price requirement established by the Secretary under this subsection if the total distribution of Class I products during the preceding month of any such handler's own farm production exceeds 3,000,000 pounds.

*Madigan*, 503 U.S. 140, 144-45 (1992), either as a matter of congressional command or to protect the authority of the agency and to promote judicial efficiency, *id.* at 145. "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy,* 503 U.S. at 144 (1992) (citations omitted). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (citation omitted).

Where exhaustion is required, there still is a separate question whether the requirement is jurisdictional, and thus non-waivable, or non-jurisdictional. In *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004), this court, in observing that the distinction between jurisdictional and non-jurisdictional exhaustion "is purely a question of statutory interpretation," *id.* at 1247, set a high bar for determining that a statute requiring exhaustion is jurisdictional: "In order to mandate exhaustion, a statute must contain '"[s]weeping and direct" statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim.'" *Id.* at 1248 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). This court will "presume exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'" *Id.* (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984)).

Prudential exhaustion, in turn, "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. Prudential

exhaustion is not required where: (1) it would occasion undue prejudice to subsequent assertion of a court action, for example through excessive delay; (2) an agency may not be empowered to grant relief, for example "because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute" or because "an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested"; or (3) the agency is biased. *Id.* at 146-49.

## A.

Section 608c(15)(A)[2] of the AMAA imposes a mandatory administrative exhaustion requirement on milk handlers "seeking to challenge the provisions of a milk marketing order." *Edaleen Dairy,* 467 F.3d at 782; *see Block*, 467 U.S. at 343; *United States v. Ruzicka*, 329 U.S. 287 (1946). There is no similar requirement for producers because the AMAA affords them no administrative remedy. *See Stark v. Wickard*, 321 U.S. 288, 309 (1944); *see also Ruzicka*, 329 U.S. at 295. Where a producer-handler sues in its capacity as a handler, as it does in challenging the Secretary's order subjecting it to price-pooling obligations, it must exhaust. *Edaleen Dairy*, 467 F.3d at 783. Thus, were the Hettingas challenging the Secretary's milk marketing order for the Arizona-Las Vegas area, they would be

---

[2] The AMAA provides in relevant part:

> (A) Any handler subject to a[] [milk marketing] order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom.

7 U.S.C. § 608c(15)(A).

required to exhaust administrative remedies before filing a lawsuit challenging those orders. *Block*, 467 U.S. at 346; *Ruzicka*, 329 U.S. at 290; *Edaleen Dairy*, 467 F.3d at 782. The Hettingas' complaint, however, is directed at the Amendments to the AMAA, not a milk marketing order. The complaint alleges that "[t]he MREA, as adopted, contained provisions that singled out and punished the Hettingas," citing subparagraphs M and N. Compl. ¶ 27.

The government advances two arguments that the Hettingas are nonetheless challenging a milk marketing order rather than the MREA, but neither is persuasive. First, the government maintains that only such orders, and not the MREA, impose affirmative obligations to pay fees. The MREA, in fact, provides that large producer-handlers located in states regulated by milk marketing orders that sell milk in unregulated states "shall be subject" to the price and pooling obligations of the marketing orders. 7 U.S.C. § 608c(5)(M). It further provides that "no" large producer-handler in Arizona "shall be exempt" from the relevant milk marketing order. *Id*. § 608(5)(N). The price and pooling obligations for large handlers in the Arizona-Las Vegas milk marketing area preexisted enactment of the MREA, and the MREA imposed those obligations on large producer-handlers. To suggest, as the government offers, that the MREA does not subject formerly exempt producer-handlers to such obligations ignores the inexorable consequences of the Amendments. The district court suggested that those consequences are not inexorable because the Secretary could relieve such obligations for the entire milk marketing area by terminating the relevant order. Putting aside the unrealistic nature of the premise, the Secretary could only repeal the marketing order upon determining it no longer tends to effectuate the policy of the AMAA. *See* 7 U.S.C. § 608c(4). There is nothing to indicate that the Secretary considers the marketing order to have outlived its purpose. Instead the

Secretary's promulgation of a rule abolishing prior exemptions is consistent with imposing the marketing order obligations on more producers, not fewer. In any event, the Hettingas are not asserting that the marketing order is not effective in most instances, only that they should be exempted from it. Under the MREA, the Secretary no longer has authority to provide such an exemption. It follows that the Hettingas are challenging provisions of the MREA amending the AMAA and not the underlying marketing order.

Second, the government maintains the MREA requires implementation by the Secretary in order to become effective, and therefore the Hettingas are challenging the Secretary's administrative action in effecting this implementation, rather than provisions of the MREA. Section 2(d) of the MREA provides:

> EFFECTIVE DATE AND IMPLEMENTATION. — The amendments made by this section take effect on the first day of the first month beginning more than 15 days after the date of the enactment of this Act. To accomplish the expedited implementation of these amendments, effective on the date of the enactment of this Act, the Secretary of Agriculture shall include in the pool distributing plant provisions of each Federal milk marketing order . . . a provision that a handler described in subparagraph (M) of such section . . . will be fully regulated by the order in which the handler's distributing plant is located.

7 U.S.C. § 608c note. As an initial matter, the MREA only requires addition of "a provision" in marketing orders with regard to subparagraph (M), not subparagraph (N), which the Hettingas also challenge. More importantly, section 2(d) does not demonstrate that to become effective the MREA requires the

Secretary first to issue an order. Instead, its text provides that the MREA took effect on a precise date shortly after its enactment. *Id.* Congress included the requirement that the Secretary add "a provision" to marketing orders making clear that large producer-handlers are subject to the orders in order to "accomplish the expedited implementation of the[] amendments," and not to make those amendments take effect. *Id.* Hence, the statutory text does not suggest the MREA has no force and effect on its own. Rather, section 2(d) reflects that large producer-handlers were automatically subject to the marketing order on a date certain, and that the Secretary was to ensure the rapid and smooth implementation of the MREA by making clear to affected parties the obligations created by operation of law upon enactment of the MREA.

Although the AMAA exhaustion requirement is mandatory, *see Block*, 467 U.S. at 344; *Ruzicka*, 329 U.S. at 290, and the court has refused to excuse it, *see Edaleen Dairy*, 467 F.3d at 782, the court has never decided whether exhaustion is a jurisdictional requirement inexcusable under any circumstances or merely a mandatory requirement inexcusable under most. *See generally Munsell*, 509 F.3d at 579. The court's opinion in *Avocados Plus*, 370 F.3d at 1248-50, holding that similar text in a different statute failed to create a jurisdictional requirement, perhaps suggests that AMAA exhaustion is best described only as mandatory and not as something more. We need not reach that question, however, because it is clear that the AMAA does not create a jurisdictional exhaustion requirement for challenges to the AMAA itself.

The AMAA's exhaustion requirement, *supra* n.2, plainly is aimed only at marketing orders and attendant obligations, not at challenges to the statute. The government's suggestion that the MREA is an "obligation imposed in connection" with an order is resourceful but unpersuasive. The context of the

reference to "any obligation imposed in connection" with marketing orders indicates Congress was referring to obligations imposed by the Secretary in the marketing orders, not a more general statutory obligation to be subject to such administrative orders. In *Ruzicka*, 329 U.S. at 289, for example, a handler challenged the amount set by an order of the Secretary directing payment into the producer settlement fund, according to terms in a marketing order, as distinct from a challenge to the marketing order itself. That is the situation captured by the phrase "obligation imposed in connection" with a milk marketing order. By contrast, the Hettingas challenge neither a marketing order nor an attendant obligation but rather Congress's determination of which entities shall be subject to the preexisting administratively determined obligations. Because the AMAA's exhaustion requirement does not apply to such statutory challenges "in clear, unequivocal terms," *Avocado Plus*, 370 F.3d at 1248, the Hettingas' constitutional challenges to the Amendments were not subject to exhaustion as a jurisdictional matter.

**B.**

Whether exhaustion should be required as a prudential matter depends on "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block*, 467 U.S. at 345. Moreover, "[n]otwithstanding [the institutional interests in exhaustion], federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them." *McCarthy*, 503 U.S. at 146 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976)).

Requiring exhaustion of the Hettingas' statutory challenges would neither "protect[] administrative agency authority" nor "promot[e] judicial efficiency." *Id.* at 145. As the Supreme

Court has observed, it would make little sense to require exhaustion where an agency "lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute" or where "an agency may be competent to adjudicate the issue presented, but still lack[s] authority to grant the type of relief requested." *Id.* at 147-48. Both conditions apply here. The Secretary lacks the power either to declare provisions of the MREA unconstitutional, or to exempt the Hettingas from the requirements of the milk marketing order as imposed by the MREA. A constitutional challenge to a statute "has generally been thought beyond the jurisdiction of administrative agencies," even if courts have sometimes made exceptions to that rule. *Thunder Basin*, 510 U.S. at 215. Although the government suggests administrative proceedings would provide the court with the benefit of the Secretary's expertise in the technical arena of milk pricing and develop an appropriate administrative record, it is unclear what benefit the Secretary could provide. The Hettingas' complaint relies on the structure of the MREA and its legislative history. The discrete factual question of whether other parties are subject to the Arizona-Las Vegas marketing order could as easily be addressed in the district court. And whatever insight the Secretary could provide regarding how the MREA furthers the AMAA's purposes does not directly address Congress's goals in enacting the MREA.

A remand for the district court to conduct the "intensely practical" balancing inquiry outlined in *McCarthy* is unnecessary, for unlike in *Avocados Plus* and the cases it cited, 370 F.3d at 1251 (citing *Montgomery v. Rumsfeld*, 572 F.2d 250, 254 (9th Cir 1978); *Ogden v. Zuckert*, 298 F.2d 312, 317 (D.C. Cir. 1961)), the issue of exhaustion has been briefed by the parties and the suggestions favoring exhaustion are unpersuasive. Accordingly, we reverse and remand the case to

the district court for further proceedings on the Hettingas' complaint.