# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 21, 2010        Decided July 16, 2010

No. 09-5157

JICARILLA APACHE NATION,
APPELLANT

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00803)

*Steven D. Gordon* argued the cause for appellant. With him on the briefs was *Thomas J. McIntosh*. *Lynn E. Calkins* entered an appearance.

*John E. Arbab*, Attorney, U.S. Department of Justice, argued the cause for appellee United States Department of the Interior. With him on the brief were *John C. Cruden*, Acting Assistant Attorney General, and *Elizabeth A. Peterson*, Attorney. *Michael T. Gray*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

*Charles L. Kaiser* argued the cause for appellee Vastar Resources, Inc., et al. With him on the brief was *Charles A. Breer*.

Before: GINSBURG, GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Jicarilla Apache Nation (Jicarilla) challenges the denial of its claim for additional royalties for natural gas leases in force from January 1984 through June 1995. After the United States Department of the Interior (Interior) rejected the claim, Jicarilla filed this suit in the district court. The district court denied Jicarilla's motion for summary judgment and, on its own motion, granted summary judgment to Interior. *Jicarilla Apache Nation v. U.S. Dep't of the Interior*, 604 F. Supp. 2d 139 (D.D.C. 2009). Because we are persuaded Interior failed to consider an important aspect of the problem when it retrospectively applied regulations intended to have only prospective effect and failed to engage in reasoned decisionmaking when it made an unacknowledged *volte-face* on the applicability of the Jicarilla methodology, we reverse in part and remand the case to the district court for further proceedings consistent with this opinion.

I

Jicarilla is a federally recognized Indian Tribe with a reservation in northwest New Mexico (the Reservation). Jicarilla obtains royalty payments by leasing the rights to produce natural gas from Reservation lands. Lessees agree to pay Jicarilla royalties equal to one-sixth or one-eighth the value of the natural gas produced and sold from the

Reservation. Sometimes the price paid for Reservation gas does not reflect market value because the gas is not sold under arm's-length contracts. To ensure full royalties in such instances, the leases contain a provision describing how to calculate the "value" of gas for royalty purposes by reference to a "major portion" price:

> "[V]alue" for the purposes hereof may . . . be calculated on the basis of the highest price paid or offered . . . at the time of production for the major portion of the . . . gas . . . produced and sold from the field where the leased lands are situated . . . .

Oil and Gas Mining Lease—Tribal Indian Lands, ¶ 3(c) (Mar. 7, 1952). The instant dispute over how the major portion price should be calculated under Interior's regulatory authority arises because the leases do not define the term "major portion."

The Indian Mineral Leasing Act of 1938 (IMLA), 25 U.S.C. §§ 396a-396g, permits an Indian Tribe, such as Jicarilla, to lease its lands for "mining purposes," with the Secretary of the Interior's (Secretary) approval and subject to the rules and regulations promulgated by the Secretary. *Id*. §§ 396a, 396d. During all relevant times, Jicarilla's leases were managed jointly by the Minerals Management Service (MMS) and the Bureau of Indian Affairs (BIA). Both agencies have regulations for computing the value of gas royalties by reference to a "major portion" price. Those regulations can be divided into two categories: first, MMS' and BIA's regulations in effect prior to 1988 (the "pre-1988 Regulations"), and second, MMS' revised regulations in effect beginning March 1, 1988 (the "1988 Regulations").

In 1996, MMS and Jicarilla began developing an entirely new methodology for calculating the major portion for Jicarilla's natural gas leases. Since no database contained all of the necessary information about arm's-length gas sales for the Reservation, MMS decided to rely on data from Jicarilla's own gas sales through its Royalty-in-Kind (RIK) program. Under the RIK program, Jicarilla received its royalty share from the gas leases "in kind" and then sold the gas in arm's-length transactions. MMS extrapolated the price Jicarilla earned selling its one-sixth or one-eighth RIK shares to establish the major portion price for the remaining five-sixths or seven-eighths shares of gas sold by lessees. This became known as the "Jicarilla methodology." In 1998 and 1999, MMS used the Jicarilla methodology to compute the major portion prices for gas sold under Jicarilla's leases during the period from January 1984 through June 1995 and then issued thirty-nine Orders to Perform, directing lessees to pay additional royalties for this period.

Several companies appealed the Orders to Perform. In 2000, Interior issued three similar decisions affirming Orders to Perform. *Robert L. Bayless*, MMS-98-0132-IND (Dec. 22, 2000), *Dugan Prod. Corp.*, MMS-98-0130-IND (Dec. 22, 2000), *Merrion Oil & Gas Corp.*, MMS-98-0228-IND (Dec. 22, 2000) (collectively "*Bayless*"). In *Bayless*, Interior denied the lessees' appeals, concluding the Jicarilla methodology was consistent with the 1988 Regulations and the major portion price was properly calculated. *See, e.g.*, *Bayless*, MMS-98-0132-IND, at 2–9.

Then, in 2007, Interior overruled an Order to Perform in which MMS had directed Intervenors Vastar Resources, Inc., Union Texas Petroleum, and Unicon Producing Co. (collectively "Vastar") to pay additional royalties to Jicarilla. *Vastar Res., Inc.*, MMS-98-0131-IND (Mar. 28, 2007)

("*Vastar*"). In *Vastar*, Interior determined the Jicarilla methodology was *in*consistent with the 1988 Regulations and could not be used to determine the major portion price for gas sold from January 1984 through June 1995. *Id*. at 6–11. Interior granted Vastar's appeal but noted MMS could recalculate the major portion price if it could do so consistent with the regulations. *Id*. at 12. The decision neither cited nor mentioned the contrary result reached in *Bayless*.

Jicarilla promptly filed suit in the district court, challenging *Vastar* as arbitrary and capricious under the Administrative Procedure Act (APA) and as a violation of Interior's trust responsibility. In its motion for summary judgment Jicarilla raised three arguments: (1) the *Vastar* decision departed from *Bayless* without explanation; (2) the decision erroneously concluded the 1988 Regulations were consistent with the major portion provision of Jicarilla's leases and the Jicarilla methodology was inconsistent with both; and (3) the decision violated Interior's fiduciary duty to protect Jicarilla's interest in the gas leases. As an alternative to its second argument, Jicarilla noted *Vastar*'s reasoning could not apply to the period from January 1984 through February 1988 because the 1988 Regulations were not in effect until March 1, 1988. The district court rejected the three primary arguments but failed to address Jicarilla's more limited alternative argument. After the district court's *sua sponte* grant of summary judgment to Interior, Jicarilla filed a timely notice of appeal.

II

Before reaching the merits, we consider Interior's argument that Jicarilla waived its current claim by failing to raise it before the district court and by failing to exhaust it before the agency.

6

A

Interior's waiver argument rests on the faulty premise that Jicarilla has raised only one claim on appeal. Interior says that "Jicarilla waived its sole claim in this Court," which, "[a]lthough variously phrased," is "that *Vastar* is 'arbitrary and capricious' (or inconsistent with the agency's fiduciary duty) to the limited extent that *Vastar* applied the 1988 MMS regulations to reject the so-called 'Jicarilla methodology' as to the MMS 'Orders to Perform' that covered natural gas produced *only* between January 1984 and February 1988." Interior Br. at 22. To the contrary, Jicarilla has presented three analytically distinct arguments: (1) *Vastar* is arbitrary and capricious because Interior failed to consider an important part of the problem when it applied the 1988 Regulations to the period from January 1984 through February 1988; (2) *Vastar* is arbitrary and capricious because Interior failed to engage in reasoned decisionmaking when it departed from the agency's precedent, *Bayless*, without adequate explanation; and (3) *Vastar* is a violation of Interior's fiduciary duty to Jicarilla.

We conclude Interior has only argued waiver as to the first of these arguments. Moreover, Interior would be hard-pressed to argue Jicarilla had waived its second and third arguments because they were raised in the complaint and the summary judgment briefing, and addressed in the district court's decision. *See* Complaint ¶¶ 8–10, 22, 24, 33–34, *Jicarilla v. U.S. Dep't of the Interior*, No. 07-cv-00803-RJL (D.D.C. May 2, 2007); Pl.'s Mem. Supp. Summ. J. ("Mot. Summ. J.") at 13–16, 19–24, *Jicarilla Apache Nation v. U.S. Dep't of the Interior*, No. 07-cv-00803-RJL (D.D.C. Jan. 22, 2008); *Jicarilla*, 604 F. Supp. 2d at 143–44, 145–47. Thus, the only waiver issue we consider is whether Jicarilla waived its argument that *Vastar* is arbitrary and capricious because

Interior impermissibly applied the 1988 Regulations to the January 1984 through February 1988 period.

Ordinarily, we will not accept an argument first raised on appeal, "for while review of the grant of summary judgment is *de novo*, this court reviews only those arguments that were made in the district court, absent exceptional circumstances." *Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009) (citations omitted). However, in this case, Jicarilla *did* present the argument to the district court. Contrary to Interior's suggestion that Jicarilla presented only the skeleton of an argument in a single sentence, Jicarilla in fact raised the argument in three sections of its summary judgment brief— the "Statement of Facts," the "Summary of Argument," and the "Argument." *See* Mot. Summ. J. at 5–6; *id.* at 12; *id.* at 19. We therefore hold Jicarilla did not waive the argument by failing to raise it in the district court.

B

Interior also says Jicarilla forfeited its first argument because it did not present it to the agency during the *Vastar* proceeding. Interior has conveniently overlooked the fact that it did not present its failure-to-exhaust argument to the district court—arguably forfeiting its claim of exhaustion. *See Potter*, 558 F.3d at 547; *see also Cutler v. Hayes*, 818 F.2d 879, 891 (D.C. Cir. 1987) (noting "the exhaustion requirement may be waived by the agency"). And Interior has not asserted, nor could it, that its argument here is based on a jurisdictional limit that cannot be waived. *See Hettinga v. United States*, 560 F.3d 498, 503 (D.C. Cir. 2009) (distinguishing non-waivable jurisdictional exhaustion limit imposed by statute from non-jurisdictional exhaustion limit imposed by court).

In any event, Interior's exhaustion argument is meritless. Interior concedes its regulations excluded Jicarilla from participating in the *Vastar* proceeding. Interior Br. at 30 & n.10. Nevertheless, Interior maintains Jicarilla could have raised its argument before the agency pursuant to a "cooperative agreement" Jicarilla executed with MMS. *See id*. at 30–33. Whatever its terms, the cooperative agreement does not alter Jicarilla's lack of status in relation to the *Vastar* proceeding and thus does not count against Jicarilla for exhaustion purposes. Simply put, a party challenging agency action does not fail to exhaust an argument when the only opportunity for presenting its position to the agency is an *ex parte* contact. *See De Jesus Ramirez v. Reich*, 156 F.3d 1273, 1277 (D.C. Cir. 1998) ("[The exhaustion of administrative remedies] requirement pertains only to administrative remedies actually available to a party. There is no support, in law or in logic, for the proposition that 'A' can be held to have failed to exhaust remedies available only to 'B.'"); *see also CSX Transp. v. STB*, 584 F.3d 1076, 1078–79 (D.C. Cir. 2009) (judicial review not precluded where party had no opportunity to raise argument until after agency issued final rule). Our exhaustion doctrine is tied to the procedural remedies actually available to interested parties, not to informal encounters between the agency and the general public. A contrary rule might unfairly penalize a party that had complied with the agency's regulations but neglected to avail itself of an off-the-record meeting with an agency official. We consequently reject Interior's failure-to-exhaust argument and turn to the merits.

## III

On appeal from the district court's grant of summary judgment, we review Interior's decision *de novo*, applying the familiar APA standard, which requires us to set aside agency

action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997–98 (D.C. Cir. 2008). Our review of agency action under the arbitrary and capricious standard is "narrow," and we refuse to "substitute [our] judgment for that of the agency." *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). Nevertheless, under *State Farm*, if the agency has committed a "clear error of judgment" or has "failed to consider an important aspect of the problem" before it, we will hold the agency action to be arbitrary and capricious. *Id*. In addition, the agency's explanation for its decision must be "sufficient to enable us to conclude that [it] was the product of reasoned decisionmaking," *id*. at 52.

Although *Vastar* encompasses royalties paid under Jicarilla's gas leases for the entire period from January 1984 through June 1995, Jicarilla has narrowed its challenge before this court to the period from January 1984 through February 1988. We correspondingly limit our review to those four years.

A

First, Jicarilla argues *Vastar* is arbitrary and capricious because Interior applied the 1988 Regulations to reject the Jicarilla methodology for computing gas royalties for the period from January 1984 through February 1988, even though the 1988 Regulations were not in effect until March 1, 1988. Jicarilla asserts Interior failed to consider an important part of the problem when it applied the 1988 Regulations to the pre-March 1, 1988 period.

Interior acknowledges MMS promulgated the 1988 Regulations with the intent that they apply prospectively, beginning March 1, 1988. Interior Br. at 34 n.11. This is unsurprising since the regulations so declare. *See* 53 Fed. Reg. 1230, 1230 ("These regulations will apply prospectively to gas production on or after [March 1, 1988]."). However, Interior has no response to Jicarilla's argument that *Vastar*'s application of the 1988 Regulations to the four-year period before March 1, 1988 is arbitrary and capricious. In fact, Interior virtually concedes this point in its brief when it states it is "proceed[ing] on the premise that *Vastar* is erroneous insofar as it applied the 1988 MMS regulations to reject the 'Jicarilla methodology' as to the MMS 'Orders to Perform' that covered the January 1984-February 1988 time-frame." Interior Br. at 34 n.11.

Our review of *Vastar* confirms Interior's apparent concession of error. In *Vastar*, Interior noted the MMS Orders to Perform under review concerned Jicarilla's gas leases "for the period January 1984 through June 1995." *Vastar*, at 2. Interior then observed that section 206.152(a)(3)(i) of the 1988 Regulations "became effective on March 1, 1988." *Id*. at 3. Even so, Interior proceeded to evaluate the Jicarilla methodology for the entire period from January 1984 through June 1995 in light of section 206.152(a)(3)(ii), the "major portion" provision of the 1988 Regulations. *See id*. at 6–11. In doing so, Interior "failed to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, namely that section 206.152(a)(3)(ii) was not in effect for the period from January 1984 through February 1988. We therefore hold *Vastar* is arbitrary and capricious with regard to this four-year period.

In a footnote, Jicarilla further suggests the APA forecloses retroactive application of the 1988 Regulations to

royalties on gas produced from January 1984 through February 1988. Jicarilla Br. at 22 n.16 (citing *Chadmoore Commc'ns, Inc. v. FCC*, 113 F.3d 235, 240 (D.C. Cir. 1997)). Even if Jicarilla properly preserved this argument below, which is doubtful, we do not find it necessary to reach the issue. When MMS promulgated the 1988 Regulations, it explicitly declared the regulations "w[ould] apply prospectively to gas production on or after [March 1, 1988]." 53 Fed. Reg. 1230, 1230. By definition, the natural gas at issue in this appeal was produced prior to March 1, 1988. Thus, the agency's own statement establishes that Interior should not have applied the 1988 Regulations to the pre-March 1, 1988 period, and it is unnecessary for us to decide whether Interior also contravened retroactivity principles under the APA.

B

Jicarilla also argues *Vastar* is arbitrary and capricious because Interior failed to provide a reasoned explanation for departing from precedent. Jicarilla explains *Bayless* upheld MMS' Orders to Perform, which applied the Jicarilla methodology to the period from January 1984 through February 1988, while *Vastar* reached a contrary result without justifying the about-face or even acknowledging *Bayless*. Jicarilla contends Interior's failure to adhere to precedent or to provide a reasoned explanation for departing from it is arbitrary and capricious with respect to this four-year period—an argument to which Interior does not respond.

The district court, addressing the issue on summary judgment, disagreed with Jicarilla. The district court observed that "while Interior did not mention [*Bayless*] by name in *Vastar*, neither did Interior sidestep or gloss over without discussion the key issues underlying [*Bayless*].

Rather, Interior faced them head on and provided a reasoned explanation for why and how it came to different conclusions." *Jicarilla*, 604 F. Supp. 2d at 143. The district court further noted, "While a citation to [*Bayless*] may have made the agency's about-face more explicit, the *Vastar* decision's analysis left no uncertainty as to the reasoning underlying Interior's new determination." *Id*. at 144. The district court held that "despite Interior's failure to mention or distinguish [*Bayless*] by name, the agency provided the requisite reasoned explanation for its determination in *Vastar* that the Jicarilla methodology upheld in [*Bayless*] violated Interior's regulations." *Id*. The court consequently refused to overturn *Vastar* on this ground.

One of the core tenets of reasoned decisionmaking announced in *State Farm* is that "an agency changing its course . . . is obligated to supply a reasoned analysis for the change." 463 U.S. at 42. We have held that "[r]easoned decision making . . . necessarily requires the agency to acknowledge and provide an adequate explanation for its departure from established precedent," and an agency that neglects to do so acts arbitrarily and capriciously. *Dillmon v. NTSB*, 588 F.3d 1085, 1089–90 (D.C. Cir. 2009) (citing *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009)).

Of course, this rule of reasoned decisionmaking has limits. For instance, we do not require an agency to grapple with every last one of its precedents, no matter how distinguishable. *LeMoyne-Owen College v. NLRB*, 357 F.3d 55, 60 (D.C. Cir. 2004) ("An agency is by no means required to distinguish every precedent cited to it by an aggrieved party."). We "permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency

appears." *Bush-Quayle '92 Primary Comm., Inc. v. FEC*, 104 F.3d 448, 454 (D.C. Cir. 1997). At the same time, we have never approved an agency's decision to completely ignore relevant precedent. *See LeMoyne-Owen College*, 357 F.3d at 61 ("[W]here . . . a party makes a significant showing that analogous cases have been decided differently, the agency must do more than simply ignore that argument."). Like a court, "[n]ormally, an agency must adhere to its precedents in adjudicating cases before it." *Consol. Edison Co. of N.Y., Inc. v. FERC*, 315 F.3d 316, 323 (D.C. Cir. 2003). Thus, "[a]n agency's failure to come to grips with conflicting precedent constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'" *Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C. Cir. 2003) (quoting *Columbia Broad. Sys. v. FCC*, 454 F.2d 1018, 1027 (D.C. Cir. 1971)).

In this case, the district court lamented *Vastar*'s failure to address *Bayless* but concluded this was a forgivable oversight because *Vastar*'s reasoning clearly explained why the agency was changing course. We do not agree that the agency's failure to address *Bayless* is excusable. Jicarilla says *Bayless* directly conflicts with *Vastar*, and Interior agrees. *See* Interior Br. at 2 ("The [Jicarilla] methodology rejected in *Vastar*, however, had previously been upheld by [Interior] in [*Bayless*]."). Under these circumstances, Interior should have confronted this conflicting precedent. Instead, *Vastar* does not even acknowledge *Bayless*' existence, let alone explain why the agency chose to depart from it. Silence in the face of inconvenient precedent is not acceptable. *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) ("[I]f an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute.").

Intervenor Vastar argues *Bayless* is the only departure from precedent and *Vastar* is consistent with more than a dozen other decisions Interior has issued since *Bayless*. Vastar Br. at 30 & n.18. This may very well be true. But because *Vastar* does not cite these other precedents nor address *Bayless* at all, Vastar's argument is merely "appellate counsel's *post hoc* rationalizations for agency action," which we "may not accept." *State Farm*, 463 U.S. at 50. If *Bayless* is an aberration, it is Interior's responsibility to so declare, not ours. We hold Interior's failure in *Vastar* to address *Bayless*, a decision reaching a contrary result on similar facts, renders *Vastar* arbitrary and capricious.

C

Because we hold *Vastar* is arbitrary and capricious on the two independent grounds discussed above, we decline to consider Jicarilla's third argument—that *Vastar*'s rejection of the Jicarilla methodology to compute gas royalties for the period from January 1984 through February 1988 also violates Interior's fiduciary duty to Jicarilla.

IV

Finally, Interior argues that even if we decide *Vastar* is arbitrary and capricious for the period from January 1984 through February 1988, we nonetheless should uphold Interior's decision because any error is harmless. In this regard, Interior contends Jicarilla has not satisfied its burden of demonstrating prejudicial error because it has not explained how its interests are harmed by the agency's mistake.

Courts reviewing agency action under section 706(2)(A)'s "arbitrary and capricious" standard must take "due account . . . of the rule of prejudicial error." 5 U.S.C. §

706. The harmless error rule applies to agency action because "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." *PDK Labs., Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). The burden to demonstrate prejudicial error is on the party challenging agency action. *See Air Canada v. DOT*, 148 F.3d 1142, 1156 (D.C. Cir. 1998). However, the harmless error rule is "not . . . a particularly onerous requirement," *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009), and the Supreme Court has cautioned courts applying the rule against "us[ing] mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record." *Id*. at 1704–05. If prejudice is obvious to the court, the party challenging agency action need not demonstrate anything further. *Id*. at 1706.

Here, the prejudice to Jicarilla from the errors in *Vastar* is obvious. If, on remand, Interior reverses its decision in *Vastar* and applies the Jicarilla methodology to compute gas royalties for the period from January 1984 through February 1988, Jicarilla likely will receive additional revenue from its lessees. And this outcome is certainly conceivable because it was the result reached in *Bayless*. *See PDK Labs.*, 362 F.3d at 798–99 (declining to hold agency's erroneous departure from precedent without explanation was harmless where, on remand, agency might decide to follow precedent). The errors in *Vastar* therefore cannot be said to be harmless.

Interior and Vastar devote substantial portions of their briefs to the argument that *Vastar*'s errors are harmless because the Jicarilla methodology for computing gas royalties would be invalid under the pre-1988 Regulations and because *Bayless* was flawed. These are issues for Interior, not this court, to consider in the first instance. *See SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."). As we explained above, in *Vastar*, Interior erroneously applied the 1988 Regulations to conclude the Jicarilla methodology was invalid for the period from January 1984 through February 1988 and failed to explain *Vastar*'s departure from *Bayless*. Interior's and Vastar's assertions here are nothing more than merits arguments disguised as a discussion of harmless error.

V

We hold *Vastar* is arbitrary and capricious with respect to the time period from January 1984 through February 1988. For the reasons discussed above, Interior's decision fails to consider an important aspect of the problem and does not reflect the reasoned decisionmaking required of an agency. We therefore reverse in part the district court's grant of summary judgment and remand the case to the district court with instructions to vacate *Vastar* in part and remand the decision to Interior for proceedings consistent with this opinion.

*So ordered.*