# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 4, 2019   Decided January 28, 2020

No. 18-1307

MANUA'S, INC., D/B/A MANUA'S DISCOUNT STORE,
PETITIONER

v.

EUGENE SCALIA, SECRETARY OF LABOR,
RESPONDENT

On Petition for Review of a Final Order of the
Occupational Safety & Health Review Commission

*Daniel E. Mooney* argued the cause for petitioner. With him on the briefs was *John D. Seiver*.

*Susannah Maltz*, Attorney, U.S. Department of Labor, argued the cause for respondent. With her on the brief were *Edmund C. Baird*, Associate Solicitor of Labor for Occupational Safety and Health, and *Heather R. Phillips*, Counsel for Appellate Litigation. *Louise M. Betts*, Attorney, entered an appearance.

Before: ROGERS and SRINIVASAN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Occupational Safety and Health Act delegates to the Secretary of Labor, acting through the Occupational Safety and Health Administration ("OSHA"), the authority to promulgate and enforce mandatory occupational safety and health standards. 29 U.S.C. § 651(b)(3). OSHA enforces those standards by inspecting workplaces, *id.* § 657(a), and issuing citations and fines to employers for violations, *id.* §§ 658–659. An employer may contest a citation before an administrative law judge ("ALJ"), and either the employer or the Secretary may thereafter petition the Occupational Safety and Health Review Commission for discretionary review. *Id.* §§ 659, 661(j); 29 C.F.R. § 2200.91(a)–(b).

Generally, an employer is responsible for ensuring that its workplace is safe and, therefore, for any violations of OSHA standards. *See Sec'y of Labor v. Pride Oil Well Serv.*, 15 O.S.H. Cas. (BNA) 1809, at *8 (Rev. Comm'n 1992); *see also Brock v. City Oil Well Serv. Co.*, 795 F.2d 507, 511–12 (5th Cir. 1986). The instant case implicates a narrow exception to that rule: An employer may rely on a specialty contractor to ensure compliance with safety standards within the purview of the contractor's expertise. *Sec'y of Labor v. Sasser Elec. & Mfg. Co.*, 11 O.S.H. Cas. (BNA) 2133, at *3 (Rev. Comm'n 1984). An employer will be "justified in relying upon the specialist to protect against hazards related to the specialist's expertise so long as the reliance is reasonable and the employer has no reason to foresee that the work will be performed unsafely." *Id.* In *Sasser*, the employer hired a crane operator to lift a generator off the ground and place it on a trailer. *Id.* at *1. The employer had hired the crane operator for this kind of work on roughly six separate past occasions. *Id.* There were overhead power lines at the work site, about which the

employer warned the crane operator. *Id.* The crane operator successfully moved the generator onto the trailer but touched a live power line as he was moving the crane back to its starting position, causing the death of one Sasser employee and the injury of another. *Id.* Sasser was cited for violating the OSHA regulation that prohibited bringing the crane within 10 feet of a live power line. *Id.* at \*2. The Commission decided that Sasser's reliance on the crane operator had been reasonable because Sasser had no expertise in operating cranes and only the operator was in direct control of the crane. *Id.* at \*4. Also, the entire job took only a few minutes. *See id.* at \*2.

This court elaborated on the *Sasser* exception in *Fabi Construction Co. v. Secretary of Labor*, 508 F.3d 1077 (D.C. Cir. 2007). The court explained that reliance is unreasonable when "an employer has reason, by way of expertise, control, and time, to foresee a danger to its employees." *Id.* at 1083. In *Fabi*, the employer construction company was hired to build a hotel and had hired two contractors to prepare shop drawings to provide specific building directions to its construction workers. *Id.* at 1079–80. The shop drawings contained errors and, after Fabi poured concrete in accord with the drawings, several floors of the hotel parking garage collapsed, killing four of Fabi's employees and injuring many others. *Id.* at 1080. Fabi was cited for several violations of OSHA standards and defended on the ground that it was not responsible for them because it reasonably relied on the contractor that provided the shop drawings. *Id.* This court disagreed, because Fabi's reliance had not been reasonable. *Id.* at 1083. In *Sasser*, the employer had no experience in crane operations, the operator had sole control over the crane, and the violation was quite sudden, as the job itself took only a few minutes. *Id.* In *Fabi,* in contrast, the employer had expertise in shop drawings, and it had reviewed and revised the drawings. *Id.* Furthermore, the evidence showed that the contractor was not in sole control;

Fabi shared control, because it interpreted the shop drawings and its employees were responsible for executing the plans directed by the drawings. *Id.* The court also noted that the hazard in *Fabi* — that is, concrete poured pursuant to the incorrect drawings — was present for weeks, which gave Fabi ample time to recognize and abate the hazard. *Id.*

Manua's, Inc. ("the Company") petitions for review of an order of the Commission finding that it violated regulations promulgated by OSHA. In January 2017, the Company hired APECS, a construction contractor with which it had done business in the past, to remove steel beams from four shipping containers by crane. During the unloading, the APECS crane operator touched an overhead power line with the crane, causing the electrocution of three Company employees and injury to several others. Relying on *Sasser*, the Company contends that the Commission erred in failing to rule that the Company was not responsible for the cited violations because it reasonably relied on APECS. For the reasons that follow, we disagree.

## I.

The Company operates several retail stores in American Samoa. In January 2017, the Company was expanding one of its stores and purchased construction materials for the project, including steel beams. At the Company's direction, the shipping containers were placed on the empty lot adjacent to the store that was being expanded.

Connie Corpuz, the Company's human resources manager, contacted multiple construction contractors to inquire about hiring a crane to remove the beams from the shipping containers. Corpuz and Glenhall Chen, the owner and CEO of the Company, decided to hire APECS, a contractor known to

them. Corpuz discussed the job with Bonnie Glenn Sabio, an APECS project manager who had been involved with past projects that APECS had performed for the Company. Corpuz and Sabio agreed that APECS would provide a boom truck and a crane operator, and that the Company would pay $125 per hour. Sabio also informed Corpuz that the Company needed to provide employees to assist with the project by attaching the steel beams to the crane while in the containers and then detaching them once they had been removed and were on the ground. APECS memorialized the agreement in a "Confirmation Letter" specifying only the price of the "equipment rental." Neither Corpuz nor anyone else from the Company inquired about the safety measures that APECS would take, and no internal discussions about safety were held by the Company.

On January 11, 2017, the first day of the job, the APECS crane operator, Melchor Sunier, drove the boom truck to the vacant lot. He was accompanied by Sabio and a handful of other APECS employees. Sabio and Sunier noticed a power line running above the vacant lot and decided it did not present a safety hazard, but apparently never measured the distance from the boom truck to the power line. Several of the Company's maintenance and warehouse workers were present and were told to rig the beams — that is, assist with attaching them to the crane, as the Company had instructed them in advance. Managers from the Company were also present at the work site, but never inquired about the safety measures that APECS would be taking for the unloading project. APECS employees showed the Company employees how to do the rigging work, but did not provide safety information or training to the Company's on-site employees. APECS also took no safety measures of its own, such as marking the boundaries of the work zone or determining whether the crane could come within twenty feet of a power line. During the day, when

APECS's signal person, who gave hand or voice signals to the crane operator guiding his operation of the crane, left the job site, a Company employee, Misi Fa'amoana, assumed those responsibilities. Otherwise, the work proceeded without incident.

The job continued on January 14. Again, Sunier drove the boom truck to the job site, accompanied by Sabio and one other APECS employee. As on the first day, Fa'amoana gave basic signals to Sunier, and Company employees rigged the steel beams. Late in the morning, while unloading the beams, the crane touched a live overhead power line. Three Company employees were electrocuted and several others were injured.

## II.

Following the January 2017 accident, an OSHA inspector conducted an inspection and cited the Company for four "serious" violations of OSHA regulations, *see* Citation and Notification of Penalty, No. 1203732, at 6–9 (June 19, 2017), namely failing to: (1) define the work area, in violation of 29 C.F.R. § 1926.1408(a)(1); (2) take precautions necessitated by the fact that the crane could come within 20 feet of the power line, in violation of 29 C.F.R. § 1926.1408(a)(2); (3) train the employees assigned to the rigging work on safety hazards and proper procedures while working near power lines, in violation of 29 C.F.R. § 1926.1408(g)(1); and (4) ensure that Fa'amoana met training and qualification requirements for a signal person, in violation 29 C.F.R. § 1926.1428(a). OSHA assessed the Company a penalty of $35,492.

Rejecting the Company's objections to the citations, the Secretary of Labor filed a complaint before the Commission seeking affirmance of the citations. Following discovery, the Secretary moved for summary judgment. In opposing

summary judgment, the Company did not contest that the violations had occurred but instead relied on *Sasser* to argue that it was not responsible for the violations because it had no experience in crane operations and had reasonably relied on APECS to be responsible for the safety measures associated with the job.

An ALJ concluded that the Company's reliance on APECS had not been reasonable and granted summary judgment for the Secretary. The three-member Commission granted the Company's petition for discretionary review and, over one dissent, affirmed the grant of summary judgment for the Secretary. The Commission agreed that the Company's reliance on APECS had not been reasonable because this was the first time that the Company had hired APECS to do crane work and it had assumed, without inquiry, that APECS would be responsible for safety precautions. *Sec'y of Labor v. Manua's, Inc.*, O.S.H.R.C. No. 18-1059, at 4–5 (Sept. 28, 2018) ("Comm'n Dec."). The Company now petitions for review of the Commission's decision.

**III.**

The Company makes several arguments, none of which is persuasive on this record. First, it argues that the Commission erred as a matter of law in failing to treat *Sasser* as controlling the outcome here, rendering the Commission's decision arbitrary and capricious. The Company points to several factual similarities with *Sasser.* In both cases, a crane operator was hired "under a broad and undefined scope of work." Appellant's Br. 31. Neither Sasser nor the Company inquired about the safety measures that would be used, and the respective agreements with the crane operators did not mention safety measures. Both Sasser's employees and the Company's employees worked on the job at the direction of the crane

operator.  A Sasser employee and a Company employee both gave signals to the crane operator.  The Company contends that the Commission "arbitrarily disregarded" these factual similarities and instead improperly relied on this court's decision in *Fabi*.  Appellant's Br. 35.

The court deferentially reviews decisions of the Commission to ensure they are supported by substantial evidence, 29 U.S.C. § 660(a), and are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," *AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d 70, 72–73 (D.C. Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)).  The Commission acts arbitrarily and capriciously if it fails to adhere to its own precedent, *see Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010), or treats similar cases dissimilarly, *see Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007), or fails to offer a reasoned basis for departing from or distinguishing its precedent, *see Brusco Tug & Barge Co. v. NLRB*, 247 F.3d 273, 278 (D.C. Cir. 2001); *see also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).

Doubtless there are similarities between the instant case and *Sasser*, but the Commission adequately explained why it viewed the circumstances here as different from *Sasser* and more akin to *Fabi*.  The Commission found that the Company employees were more "intimately involved in the work" and that "Manua's and its employees shared responsibility for safety."  Comm'n Dec. at 5.  The Commission explained that, unlike in *Sasser*, this was the first time that the Company had hired APECS to perform crane work, so "there was no history of safe crane practices in compliance with the Act upon which to base reasonable reliance."  *Id.*  Further, the Commission stated the potential duration of exposure to the violative condition was different.  In *Sasser*, the work site was compliant

with OSHA regulations until the moment that the crane came into contact with the power line. Here, there were several violative conditions — the failure from the outset of the project to identify the work zone or to determine whether the boom truck could come within twenty feet of a power line. Also, in *Sasser*, only two of the employer's employees were assisting the contractor, while here, the Company "had assigned a crew consisting of approximately a dozen employees" who "were integrally involved in the rigging and unloading work" "to work with APECS for two days." *Id.* at 7. The Commission reasoned that "when very few employees are involved for only a brief period, the[ir] work is likely to be incidental in nature and a more limited inquiry by the employer may be reasonable," *id.* at 6, but those were not the circumstances in the instant case.

The Commission's treatment of this case as distinguishable from *Sasser* was thus reasoned and the Commission has not failed to adhere to its own precedent, *see Jicarilla Apache Nation*, 613 F.3d at 1120. The Commission's decision not to treat *Sasser* as dictating the outcome here was therefore not arbitrary.

The Company next argues that the Commission misapplied the summary judgment standard by failing to acknowledge genuine disputes of material fact. Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *Sec'y of Labor v. Van Buren–Madawaska Corp.*, 13 O.S.H. Cas. (BNA) 2157, at *2 (Rev. Comm'n 1989).

The Company contends that the Commission disregarded disputed material facts regarding the scope of its agreement with APECS, whether its prior dealings with APECS were

sufficient to render its reliance reasonable, who was responsible for determining the position of the shipping containers, and whether the safe completion of the first day of work justified the Company's reliance on APECS. But there is no genuine dispute about the scope of the agreement between the Company and APECS. Rather, the evidence shows, at most, that the Company had a unilateral and unjustified expectation — not an agreement — that APECS would be responsible for the safety of the project. Similarly, the Company's prior dealings with APECS and the fact that the work proceeded without incident on the first day are not disputed factual issues; rather, the Company simply objects to the significance the Commission attached to undisputed evidence. And the Company's argument that it decided on the placement of the shipping containers in consultation with APECS, not unilaterally, concerns an immaterial factual dispute because the analysis would not be changed even if the Company's version of events were true. The significance of the Company's role in placing the shipping containers is that it shows that the Company *shared* control over the project with APECS. *See Fabi*, 508 F.3d at 1083. That fact remains regardless of whether the Company alone decided where to place the containers or did so in consultation with APECS.

The Company also contends that the Commission's suggestion that the accident was foreseeable implicitly and impermissibly decided disputed factual questions. The Company points to the OSHA inspector's testimony that the cause of the accident was not easily explained. In the Company's view, this suggests that it could not have foreseen the accident. APECS never informed it of the boom truck's maximum working radius, information essential to determining the work zone. Yet again, neither of these arguments implicates a factual dispute, and these facts are immaterial

because, even if true, the Commission's decision, and its distinction of *Sasser*, was nevertheless reasonable.

Finally, the Company contends that the Commission improperly decided that Fa'amoana was "signaling" within the meaning of the OSHA regulation. Specifically, the Company argues that the Commission disregarded the testimony of the OSHA inspector suggesting that a signal person was not needed. This argument does not implicate a factual dispute because it is undisputed what Fa'amoana did: The Company conceded in the agency proceedings that Fa'amoana "gave basic signals to the crane operator." Resp. to Req. for Admis. at 7 (O.S.H.R.C. No. 17-12089). Consequently, "[w]hether this made the cited signal requirements of the standard applicable or not is a legal, not factual[,] issue," Comm'n Dec. at 6 n.5, and is therefore not a basis for denying a motion for summary judgment.

Accordingly, because the Commission reasonably distinguished *Sasser* and properly applied the summary judgment standard, we deny the Company's petition for review.